No. <u>132015</u>
CIVIL

DIVISION
B
deMAHY

---

**IN THE**
**16TH JUDICIAL DISTRICT COURT**
**PARISH OF ST. MARY**
**STATE OF LOUISIANA**

SALIENT ARMS INT. LLC

**VS.**

SALIENT ARMS INTERNATIONAL INC, ADRIAN CHAVEZ and
AARON CHAVEZ

Cause of Action: BREACH OF CONTRACT

FILED: January 9, 2018

CLIFF DRESSEL, CLERK OF COURT

By: Charlene M. LeBlanc , Dy. Clerk

NICHOLAS F. LAROCCA JR.
NICHOLAS F. LAROCCA, JR., LTD
P.O. BOX 2466
MORGAN CITY, LA 70381-2466
PHONE (985) 385-4800

Attorney For Plaintiff



EXHIBIT
1
tabbies®

---

## NOTICE PLEASE

    PLEASE DO NOT REMOVE ANY PAPERS FROM THIS FILE.  IF YOU ARE
INTERESTED IN ONLY ONE PAPER IN THIS CASE THEN TAKE THE ENTIRE FILE WITH
YOU SO TO KEEP ALL PAPERS TOGETHER.
    YOU WILL FIND PAPER FILED FIRST IN THIS CASE ON TOP, PAPER FILED NEXT
SECOND TO THE TOP AND SO ON THROUGHOUT THE CASE.  ALL PAPERS BEING
KEPT IN THE ORDER IN WHICH THEY WERE FILED.

# 132015

## J U R Y    R E P O R T

| JURY TRIAL REQUESTED, PRAYED FOR OR ORDERED (PARTY) | DATE JUROR FILING FEE POSTED | DATE JURY BOND FILED |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## J U D G M E N T    R E P O R T

| DESCRIPTION OF JUDGMENT | DATE RENDERED | COSTS ASSESSED TO: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| SALIENT ARMS INT., LLC | * | 16TH JUDICIAL DISTRICT COURT |
|---|---|---|
| VS. NO. **13 20 15** DIV. "__" | * | PARISH OF ST. MARY |
| SALIENT ARMS INTERNATIONAL, INC., ADRIAN CHAVEZ AND AARON CHAVEZ | * | STATE OF LOUISIANA |

PETITION FOR SPECIFIC PERFORMANCE

The petition of Salient Arms, Int., LLC ("La. Salient"), a limited liability company organized and existing under the laws of the State of Louisiana, which is domiciled in St. Mary Parish, Louisiana, respectfully alleges that:

1.

The defendants are:

    A.    Salient Arms International, Inc. ("Nevada Salient"), a corporation formed under the laws of the State of Nevada who is domiciled in Las Vegas, Nevada;

    B.    Adrian Chavez ("AC"), a resident of the full age of majority who is domiciled in Las Vegas, Nevada; and

    C.    Aaron Chavez ("Aaron C"), a resident of the full age of majority who is domiciled in Las Vegas, Nevada.

2.

At all pertinent times, AC and Aaron C owned and operated a fire arms manufacturing facility using the trade name Salient Arms.

3.

On or about September 20, 2017, La. Salient offered to purchase certain of the assets of Nevada Salient; Nevada Salient accepted the offer and the parties entered into an Asset Purchase Agreement ("APA"). A complete copy of the APA along with its schedules and exhibits is attached hereto as Exhibit "A".

4.

The APA included the conveyance business records, furniture, machinery and equipment, all inventory, all permits, approvals and memberships relating to the ownership or operation of the business, and all intellectual property, including technical drawings, inventions, processes, designs, formulas, source codes, trade secrets, proprietary knowledge, patents (including design

SCANNED

JAN 28 ----

patents, industrial designs and utility models, patent applications, patent disclosures awaiting filing determination, inventions and improvements), registered in the name of Nevada Salient 's two sole shareholders, AC and Aaron C.

5.

Although La. Salient has agreed to complete the above described transaction, defendants, Nevada Salient, Adrian Chavez and Aaron Chavez have failed and refused to recognize the sale or conform to its obligation therein.

6.

Section 9.8 of the APA affords each party the right to seek specific performance and stipulates that injunctive relief may be afforded the non-breaching party without the posting of any security.

7.

Accordingly, petitioner seeks an order of this court granting it specific performance against defendants, and pending the adjudication of the remedy, petitioner seeks an injunction preventing defendants from selling the assets to any other third person, and requiring it to consummate the APA. And complete a closing of this transaction.

WHEREFORE, petitioner, Salient Arms Int., LLC prays that the defendants be served with this petition along with a citation commanding them to appear and answer the allegations herein and that after all delays and due proceedings conducted, defendants, Salient Arms International, Inc., Adrian Chavez and Aaron Chavez be enjoined from its breach of contract and order to complete the transaction in question.

Petitioner further prays that an injunction issue herein ordering defendants to consummate this transaction and not to dispose of or otherwise encumber the assets described above pending a conclusion of this civil action.

RESPECTFULLY SUBMITTED BY:

NICHOLAS F. LaROCCA, JR., LTD.
(A Professional Law Corporation)

By:_____
NICHOLAS F. LaROCCA, JR. (B.R. #8045)
607 Brashear Avenue
Post Office Box 2466
Morgan City, LA 70381-2466
Telephone: (985) 385-4800

SCANNED

PLEASE FURNISH A CERTIFIED COPY OF THE PETITION ALONG WITH CITATION JAN 9 2018
FOR EACH DEFENDANT FOR SERVICE PURSUANT TO THE LOUISIANA LONG ARM
STATUTE

RECEIVED AND FILED

JAN 0 9 2018

Dy. Clerk of Court

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement"), dated as of September 20, 2017, (the "Effective Date") is entered into Salient Arms International, LLC represented by Adrian Chavez and Aaron Chavez, with address in Las Vegas, NV 89119 in the State of Nevada ("Seller"), and SALIENT ARMS INT, LLC ("Buyer"), a Company organized under the laws of the State of Louisiana.

## RECITALS

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer certain assets of Seller on the terms and subject to the conditions set forth herein.

WHEREAS, on September 21, 2017, Buyer and Seller each executed a certain document titled Heads of Terms, which is attached hereto as Exhibit A.

WHEREAS, Buyer drafted this Asset Purchase Agreement which, among other things, incorporates in greater detail the terms set forth in Exhibit A.

WHEREAS, Buyer and Seller agree that the terms of Exhibit A are binding and enforceable and if there is any discrepancy between Exhibit A and this Agreement, then the terms of Exhibit A are to supersede the terms of this Agreement.

WHEREAS, Buyer agrees that Seller has 10 days from the date of this Agreement propose changes and/or revisions to this Agreement only, which changes and/or revisions would only be binding should they be in writing, signed by both parties, and do not conflict with or otherwise nullify the terms set forth in Exhibit A.

Shehraze Shah
Partner
Salient Arms Int, LLC

Adrian Chavez
President
Salient Arms International, Inc.

Aaron Chavez
Vice President
Salient Arms International, Inc.

NOW, THEREFORE, in consideration of the mutual agreements, covenants, representations and warranties herein contained, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF ASSETS

1.1     At the Closing, on and subject to the terms and conditions of this Agreement, Buyer shall purchase from Seller, and Seller shall, convey, assign, transfer and deliver to Buyer the assets

EXHIBIT "A"

SCANNED

JAN 29 2018

RECEIVED AND FILED

JAN 09 2018

Dy. Clerk of Court

(the "Purchased Assets"), provided however, that the Purchased Assets shall not include any of the Excluded Assets:

1.1.1     Purchased Assets: all and other executory commitments of Seller entered into in connection with this Purchase Agreement, and with emphasis on assets which are detailed in Schedule 1.1, attached hereto.

1.2     Assumption and Exclusion of Liabilities: In addition to the obligations of the Buyer for the Purchased Assets, Buyer agrees to assume those liabilities specifically identified below (collectively, the "Assumed Liabilities"). The assumed liabilities are as follows:

1.  Fulfillment of orders for Osage Group, not to exceed $223,418.86
2.  Fulfillment of orders for Ingen, not to exceed $271,569.12
3.  Fulfillment of individual/direct customer, not to exceed [$60,000]

Seller shall retain, and Buyer shall not assume, any other liabilities, obligations or undertakings of Seller of any nature whatsoever, whether accrued, absolute, fixed or contingent, known or unknown, due or to become due, unliquidated or otherwise (collectively, the "Excluded Liabilities") including any liabilities relating to (a) all accrued liabilities and debts owed to third parties by Seller or its Affiliates.

1.2.1     Excluded Liabilities: Taxes with respect to or attributable to the Purchased Assets for all taxable periods, or any portion thereof, up to and including the Closing Date, (c) any liabilities associated with the Excluded Assets, (d) any liabilities associated with the Purchased Assets that arose or relate to events that occurred prior to the Closing Date (including liabilities arising under Environmental Laws) and, (e) all of the liabilities, obligations and undertakings of the Seller arising prior to the Closing Date and not expressly assumed by Buyer in connection with the Assumed Liabilities.

1.3     Instruments of Conveyance. The conveyance, assignment, transfer and delivery of the Purchased Assets will be effected by evidence of execution and delivery by Seller to Buyer of such assignment and assumption agreements, patent and trademark assignments, and other instruments of transfer, all dated as of the Closing and mutually agreed to by the parties, as shall be necessary to effectively vest in Buyer good and marketable title in the Purchased Assets (the "Instruments of Conveyance").

1.4     Nondelivered Assets. Notwithstanding anything else contained in this Agreement, in the event that a Purchased Asset is not delivered by Seller to Buyer at Closing (a "Nondelivered Asset"), Seller shall deliver such Purchased Asset to Buyer as soon as Seller has actual knowledge of the existence of such Nondelivered Asset.

SCANNED

JAN 29 2018

## ARTICLE 2
### PURCHASE PRICE; OTHER CONSIDERATION

2.1    Purchase Price. The Purchase Price is Three Hundred Thousand Dollars ($300,000) and will be paid over 60 months at Five Thousand Dollars ($5,000) per month to Seller on the 5th day of every month after Closing.

2.2    Allocation of Purchase Price. With regard to all Taxes, the allocation of the Purchase Price to the Purchased Assets shall be in accordance with their fair market value and shall be consistent with Section 1060 of the Internal Revenue Code of 1986, as amended and the regulations thereunder (the "Code"). The parties shall use their best efforts prior to Closing to reach an agreement on such allocation, but such agreement shall not be a condition of the Closing. If no agreement is reached within thirty days after the Closing, Buyer shall have the right to refer such matter to a nationally recognized firm of independent public accountants agreed upon by Buyer and Seller. The determination made by such firm shall be conclusive and non-appealable. The fees and disbursements of such firm shall be borne equally by Buyer and Seller. Seller and Buyer shall timely file a Form 8594 with the Internal Revenue Service in connection therewith. For purposes of the Code, Seller and Buyer agree to report the transactions contemplated by this Agreement in a manner consistent with such allocation. In addition, Buyer and Seller agree to provide each other with their respective Federal Tax Identification numbers at Closing for purposes of reporting this transaction to the Internal Revenue Service.

2.3    Transaction Related Costs and Taxes. Buyer shall not be responsible for any income and gains Taxes payable in connection with the transfer of the Purchased Assets to Buyer prior to the date of closing. Seller shall be responsible for any income realized form any of the Excluded Assets. Each party shall bare its own cost associated to closing.

## ARTICLE 3
### SELLER'S REPRESENTATIONS AND WARRANTIES

3.1    Seller represents and warrants to Buyer that the statements contained in this Article 3 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Article 3), except as set forth on the disclosure schedule delivered by Seller to Buyer on the date hereof (the "Disclosure Schedule").

3.2    Organization.

Sellers are Individuals acting collectively as Salient Arms International, Inc. and are duly qualified to do business and in good standing in the State of Nevada. No subsidiaries or other Affiliates of Seller own any of the Purchased Assets.

3.3    Authorization; No Breach. The execution, delivery and performance of this Agreement and any other agreements contemplated hereby and consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by Seller, as appropriate. No vote or other approval or consent of any other Person is required for Seller to execute, deliver and perform this Agreement and the other agreements contemplated hereby or to consummate the transactions contemplated hereby and thereby. Other than such actions that have already been

SCANNED

JAN 2 9 2018

taken, no corporate act or proceeding on the part of Seller is necessary to authorize the execution, delivery or performance of this Agreement, any other agreement contemplated hereby or the consummation of the transactions contemplated hereby or thereby. This Agreement has been duly executed and delivered by Seller and constitutes a valid and binding obligation of Seller enforceable in accordance with its terms. The execution, delivery and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby, do not and will not (a) conflict with or result in any breach of any of the provisions of, (b) constitute a default under, result in a violation of, or cause the acceleration of any obligation under, (c) result in the creation of any lien, security interest, charge or encumbrance upon any of the Purchased Assets hereunder, (d) result in the triggering of any rights of first refusal or other similar rights, require any authorization, consent, approval or exemption or require any action by or notice to any court or other governmental body under (i) the provisions of the certificate of incorporation, bylaws, regulations or organizational documents of Seller, (ii) any law, statute, rule, regulation, judgment, order, agreement or decree to which Seller is subject or by which any of the Purchased Assets is bound, or (iii) any partnership, joint venture, contract or other agreement to which Seller is a party or by which it is bound.

    3.4    Title and Condition of Purchased Assets:

        3.4.1    Schedule 1.1 contains a list of the Purchased Assets including patents, trademarks, and all Intellectual Property (IP) associated with Salient Arms International, Inc. that are under the name of Adrian and Aaron Chavez. Seller has delivered to Buyer complete and accurate documentary evidence of each Purchased Asset, and notice of whether the Purchased Assets have been modified from the terms set forth in such copy in any respect. Seller is not, and no other party is, in material default of any Purchased Asset, and no party to any Purchased Asset has the right to otherwise modify any Purchased Asset, including upon the giving of notice or the passage of time. The Purchased Assets do not and have not violated in any material way any law, ordinance, regulation or other governmental order, and Seller has no received notice of any pending or threatened legal or statutory action regarding any of the Purchased Assets. Seller owns, or at or prior to Closing will own, good and marketable title, free and clear of all liens, charges, security interests, encumbrances and claims of others whatsoever (hereinafter referred to as "Liens") other than the Permitted Encumbrances, to all of the Purchased Assets. At the Closing, Seller shall convey good and marketable title to all of the Purchased Assets, free and clear of all Liens, other than the Permitted Encumbrances and Liens for current Taxes not yet due and payable which shall be prorated in accordance with Section 2.2.

    3.5    Contracts and Commitments:

        3.5.1    The list of Purchased Assets on Schedule 1.1 includes the following contracts and/or other agreements (or, in the case of oral contracts, sets forth written summaries thereof) by or to which the Purchased Assets are bound or subject;

        3.5.2    Any agreements that limit or purport to limit the ability of Seller to own, operate, sell, transfer, pledge or otherwise dispose of any Purchased Assets;

        3.5.3    Seller has supplied Buyer with a true and correct copy of all Agreements and/or Contracts together with all amendments, waivers or other changes thereto.

SCANNED

JAN 2 9 ----

3.6     Litigation; Proceedings. There is no Litigation that seeks to prevent the consummation of the transaction contemplated by this Agreement. The Purchased Assets are not subject to any judgment, injunction, decree, order or other determination of a court or governmental authority.

## ARTICLE 4
## BUYER'S REPRESENTATIONS AND WARRANTIES

4.1     Buyer represents and warrants to Seller that the statements contained in this Article 4 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Article 4), except as specifically qualified by the terms of such warranty or representation.

4.2     Corporate Organization and Power. Buyer is a Limited Liability Corporation in the State of Louisiana. Buyer has full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

4.3     Authorization and Enforceability. The execution, delivery and performance by Buyer of this Agreement and the other agreements contemplated hereby and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all requisite action, and no other proceedings on the part of Buyer is necessary to authorize the execution, delivery or performance of this Agreement or the other agreements contemplated hereby. This Agreement, and the other agreements contemplated hereby, constitute a valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms.

4.4     No Violation. Buyer is not subject to or obligated under its articles of incorporation, any applicable law, rule or regulation of any governmental authority, or any agreement or instrument, or any license, franchise or permit, or subject to any order, writ, injunction or decree that would be breached or violated by its execution, delivery or performance of this Agreement or the other agreements contemplated hereby. Buyer shall comply in all material respects with all applicable laws, and with all applicable rules and regulations of all governmental authorities in connection with its execution, delivery and performance of this Agreement and the other agreements contemplated hereby and the transactions contemplated hereby and thereby.

## ARTICLE 5
## PRE-CLOSING COVENANTS

5.1     Negative Covenants. Prior to the Closing, Seller shall not in any instance where the described action or inaction will, directly or indirectly, affect the Purchased Assets, without the prior written consent of Buyer:

5.1.1    sell, transfer, lease, assign, pledge or otherwise mortgage any asset or create or permit any Lien to be placed on any asset, other than in the ordinary course of business consistent with past practice;

5.1.2    take any action that would result in any representation and warranty of Seller becoming untrue in any material respects as of the Closing Date;

SCANNED

Jan 29 ....

## ARTICLE 6
## CLOSING CONDITIONS – BUYER

6.1    The obligation of Buyer to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions on or before the Closing Date:

6.2    Representations and Warranties. The representations and warranties set forth in Article 3 hereof shall be true and correct at and as of the Closing Date as though then made and as though the Closing Date was substituted for the Effective Date.

6.3    Covenants. Seller shall have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement prior to the Closing.

6.4    Government Compliance and Approvals. All governmental filings, authorizations and approvals that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained on terms and conditions reasonably satisfactory to Buyer prior to the Closing date.

6.5    Third Party Consents. All material consents, if any, by third parties that are required for the transfer of the Purchased Assets to Buyer as contemplated hereby or that are required to prevent a breach of, or a default under or a termination or modification of, any Purchased Asset, shall have been obtained.

6.6    No Action or Court Order. No action or proceeding before any court or government body shall be pending or threatened that seeks to prevent the carrying out of this Agreement or any of the transactions contemplated hereby, declare unlawful the transactions contemplated by this Agreement or cause such transactions to be rescinded.

6.7    Performance Obligations. All proceedings to be taken by Seller in connection with the consummation of the Closing and the other transactions contemplated hereby and all certificates, instruments and other documents required to affect the transactions contemplated hereby reasonably requested by Buyer shall be satisfactory in form and substance to Buyer and its counsel.

Any conditions specified in this Article 6 may be waived by Buyer; provided that no such waiver shall be effective unless it is set forth in a writing executed by Buyer.

## ARTICLE 7
## CLOSING CONDITIONS - SELLER

7.1    The obligation of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions on or before the Closing Date:

7.2    Representations and Warranties. The representations and warranties set forth in Article 4 hereof shall be true and correct in all material respects at and as of the Closing as though then made and as though the Closing Date was substituted for the Effective Date throughout such representations and warranties.

SCANNED

JAN 2 9 2018

7.3   Covenants. Buyer shall have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement prior to Closing. Buyer acknowledges and agrees that on the Closing Date, Seller shall cease and permanently discontinue all uses of the "Salient Arms International" and/or all associated name or names associated with "Salient Arms International" name, any trademarks associated therewith, and any derivatives thereof (together, the "Salient Arms International") and, any trademarks associated therewith and any derivatives thereof and complete the removal of the Salient Arms International name and Salient Arms International name from all assets, properties and materials of or related to the Business, including all products, technical information and promotional materials. Notwithstanding the foregoing, Seller, agrees that from and after the Closing Date that Seller (a) will not expressly, or by implication, do business as or represent themselves as Buyer, or (b) with respect to products or services sold or provided by them after the Closing Date, will not represent that such products or services are those of Seller. Seller acknowledges and agrees that Seller shall not have any rights in Salient Arms International and Seller shall not contest the ownership or validity of any rights of Buyer in or to the Salient Arms International name.

7.4   Performance Obligations. All proceedings to be taken by Buyer in connection with the consummation of the Closing and the other transactions contemplated hereby and all certificates, opinions, instruments and other documents required to affect the transactions contemplated hereby reasonably requested by Seller shall be reasonably satisfactory in form and substance to Seller and its counsel.

7.5   Government Compliance and Approvals. All governmental filings, authorizations and approvals that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained on terms and conditions reasonably satisfactory to Seller, including all Regulatory Approvals.

7.6   Third Party Consents. Any and all material consents or approvals required by third parties, to include the Assignment and Change of Owner name for the Purchased Assets with the United States Patent and Trademark Office, for the transfer of the Purchased Assets to Buyer as contemplated hereby or that are required to prevent a breach of, or a default under or a termination or modification of any Assumed Liability to which Seller is a party or to which any of the Purchased Assets is subject, shall have been obtained by Seller.

7.7   No Actions or Court Orders. No action or proceeding before any court or government body shall be pending or threatened that would (i) prevent the carrying out of this Agreement or any of the transactions contemplated hereby, (ii) declare unlawful the transactions contemplated by this Agreement or (iii) cause such transactions to be rescinded.

## ARTICLE 8
## CLOSING MATTERS

8.1   The Closing. The consummation of the transactions contemplated by this Agreement (the "Closing") shall take place on the effective date at a time and location, to be mutually agreed upon by the Parties, (the "Closing Date").

SCANNED

JAN 2 9 2018

8.2     Actions to Be Taken at the Closing. The sale, conveyance, assignment and delivery of the Purchased Assets and the payment of the Closing Payment pursuant to the terms of this Agreement shall take place at the Closing; and, simultaneously, the other transactions contemplated by this Agreement shall take place by the delivery of all of the closing documents set forth in Section 8.3 below.

8.3     Closing Documents.

Seller shall deliver to Buyer at the Closing the following documents, duly executed by Seller where necessary to make them effective:

(a)     any authorizations, consents or approvals required pursuant to Sections 7.5 and 7.6;

(d)     a certificate dated the Closing Date, signed by an authorized officer of Seller, to the effect that the conditions set forth in Sections 7.1, 7.2, 7.3 and 7.4 have been satisfied; and

(e)     such other instruments of sale, transfer, assignment, conveyance and delivery as are required in order to transfer to Buyer good and marketable title to the Purchased Assets, free and clear of all liens, charges, security interests and other encumbrances, except for Permitted Encumbrances, or as may reasonably be requested by Buyer.

All of the foregoing documents in this Section 8.3 shall be reasonably satisfactory in form and substance to Buyer and its counsel and shall be dated as of the Closing Date.

8.4     Buyer shall deliver to Seller at the Closing the following documents, duly executed by Buyer where necessary to make them effective:

(a)     the amount of the Closing Payment;

(b)     the Instruments of Conveyance;

(c)     such assignment agreements as may be required to assign the Assumed Applications;

(d)     a certificate dated the Closing Date, signed by an authorized officer, to the effect that the conditions set forth in Sections 7.1 and 7.2 have been satisfied; and

(e)     such other instruments of assignment and assumption, as may be reasonably be requested by Seller.

All of the foregoing documents in this Section 8.4 shall be reasonably satisfactory in form and substance to Seller and shall be dated as of the Closing Date.

8.5     Possession. Simultaneously with the Closing, Seller shall cooperate with Buyer and take such steps as are reasonably necessary to put Buyer in actual possession and operating control of the Purchased Assets.

8.6     Efforts to Consummate Closing Transactions. On the terms and subject to the conditions contained in this Agreement, Seller and Buyer agree to work in good faith to take, or to cause to be taken, all reasonable actions, and to do, or to cause to be done, all reasonable things, necessary, proper or advisable under applicable laws and regulations, to consummate, as soon as reasonably practicable, the Closing, including the satisfaction of all conditions set forth herein.

## ARTICLE 9
### INDEMNIFICATION

9.1     Indemnification by Seller. Seller agrees to indemnify Buyer and its officers, managers, partners, employees, affiliates, agents, members, successors and assigns (each, a "Buyer Indemnified Party" and, collectively, the "Buyer Indemnified Parties") and hold them harmless from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens, attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for damages sustained by Buyer or Buyer's entity arising out of: (1) the negligent acts, omissions, negligence or willful misconduct of Seller in the performance of its obligations pursuant to this Agreement; (2) any misrepresentation made by Seller in this Agreement; (3) any breach of this Agreement by Seller; or (4) the failure of Seller to comply with, and any liabilities arising under, any Applicable Law. For the sake of clarity, the Parties agree that consequential damages suffered by a third party which are an element of loss subject to indemnification hereunder shall be considered direct damages of the Buyer hereunder.

9.1.1     any misrepresentation in any of the representations or breach of any of the warranties of Seller contained in this Agreement or in any agreements, exhibits, schedules, certificates or annexes delivered or to be delivered pursuant to the terms of this Agreement or otherwise incorporated in this Agreement;

9.1.2     any breach of, or failure to perform, any agreement or covenant of Seller contained in this Agreement including the failure to comply with the provisions of this Article 9;

9.1.3     any Claims against any of Buyer Indemnified Parties arising out of the use, ownership or operation of the Purchased Assets prior to the Closing; or

9.1.4     any Excluded Liabilities.

All of the foregoing items in subsections 9.1.1 – 9.1.4 are collectively known as the "Buyer Losses."

9.2     Indemnification by Buyer. Buyer agrees to indemnify Seller, and its officers, directors, managers, partners, employees, agents, and shareholders (each, a "Seller Indemnified Party", and, collectively, the "Seller Indemnified Parties"), and hold them harmless against any Losses that any of the Seller Indemnified Parties may suffer, sustain or become subject to, directly or indirectly, as a result of:

9.2.1     any misrepresentation in any of the representations or breach of any of the warranties of Buyer contained in this Agreement or in any agreements, exhibits, schedules,

SCANNED

JAN 29 2018

certificates or annexes delivered or to be delivered pursuant to the terms of this Agreement or otherwise incorporated in this Agreement;

  9.2.2 any breach of, or failure to perform, any agreement or covenant of Buyer contained in this Agreement, including assuming the Assumed Liabilities, the Assumed Contracts and the provisions of this Article 9; or,

  9.2.3 any Claims against any of the Seller Indemnified Parties with respect to the Purchased Assets subsequent to Closing.

All of the foregoing items in subsections 9.2.1 — 9.2.3) are collectively known as the "Seller Losses."

  9.3 Method of Asserting Claims. As used herein, an "Indemnified Party" shall refer to a "Buyer Indemnified Party" or "Seller Indemnified Party," as applicable, the "Notifying Party" shall refer to the party entitled to indemnification hereunder, and the "Indemnifying Party" shall refer to the party(ies) hereto obligated to indemnify such Notifying Party's Indemnified Parties.

  9.3.1 In the event that any of the Indemnified Parties is made a defendant in or party to any action or proceeding, judicial or administrative, instituted by any third party, the liabilities for which, or the costs or expenses of which, are Seller Losses or Buyer Losses, as the case may be, (any such third-party action or proceeding being referred to as a "Claim"), the Notifying Party shall give the Indemnifying Party prompt notice thereof. The failure to give such notice shall not affect any Indemnified Party's ability to seek reimbursement except to the extent such failure adversely affects the Indemnifying Party's ability to defend successfully a Claim. The Indemnifying Party shall be entitled to contest and defend such Claim. Such defense shall not relieve the Indemnifying Party of its liability under this Article 9 for any Loss to the Notifying Party relating to such Claim. Notice of the intention to contest and defend shall be given by the Indemnifying Party to the Notifying Party within fifteen (15) Business Days after the Notifying Party's notice of such Claim (but in all events as soon as possible prior to the date such Claim is due to be filed). Such contest and defense shall be conducted by counsel employed by the Indemnifying Party. The Notifying Party shall be entitled at any time, at its own cost and expense (which expense shall not constitute a Loss), to participate in such contest and defense and to be represented by attorneys of its or their own choosing. If the Notifying Party elects to participate in such defense, the Notifying Party shall cooperate with the Indemnifying Party in the conduct of such defense. Neither the Notifying Party nor the Indemnifying Party may concede, settle or compromise any Claim without the consent of the other party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, in the event the Indemnifying Party fails or is not entitled to contest and defend a Claim, the Notifying Party shall be entitled to contest, defend and settle such Claim in such manner and on such terms as the Notifying Party may deem appropriate, and the Indemnifying Party shall be liable for the Losses of the Notifying Party in accordance with the provisions of this Article 9.

  9.3.2 In the event any Indemnified Party should have a claim against any Indemnifying Party that does not involve a Claim, the Notifying Party shall deliver a notice of such claim with reasonable promptness to the Indemnifying Party.

SCANNED

JAN 2 9 2018

9.4   Limits on Indemnification. With respect to any Claims arising under Section 9.1 or 9.2, the Indemnified Party shall not be entitled to indemnification until the aggregate Losses, suffered by such party, or its successors and assigns, in connection with any breach of this Agreement exceeds $10,000 (the "Basket"), whereupon, the Indemnified Party shall be entitled to indemnification hereunder from the Indemnifying Party for the aggregate Losses suffered exceeding the amount of the Basket. With respect to any such claims arising under Section 9.1 or 9.2, no Indemnifying Party shall be liable for indemnification under this Article 9 for amounts in the aggregate, exceeding the Purchase Price (the "Indemnification Cap").

9.5   Survival. The representations and warranties set forth in this Agreement or in any writing delivered to Buyer or Seller in connection with this Agreement shall survive the Closing Date for a period of twelve (12) months.

9.6   Sole Remedy. Except in the case of fraud or intentional misrepresentation, the provisions and procedures set forth in this Article 9 shall constitute the Parties' exclusive rights and remedies for any breach of this Agreement.

9.7   Tax Treatment and Indemnity Payments. All indemnification payments made under this Agreement shall be treated as adjustments to the Purchase Price for Tax purposes.

9.8   Specific Performance. Each Party acknowledges that, in case of any breach of its respective covenants, agreements or other obligations hereunder, the non-breaching Party would suffer immediate and irreparable harm. Accordingly, notwithstanding anything herein to the contrary, in case of any such breach or threatened breach, the non-breaching Party shall be entitled (in addition to any remedy that may be available at law or in equity (including monetary damages) to seek and obtain (a) a decree or order of specific performance to enforce the observance and performance of such covenant, agreement or obligation (including the obligation of Buyer to consummate the Closing) or (b) an injunction restraining such breach or threatened breach. Each Party agrees that no other Party or any other Person shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 9.8, and each Party irrevocably waives any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument.

### ARTICLE 10
### ADDITIONAL AGREEMENTS

11.1   Press Release and Announcements. No press release related to this Agreement or the transactions contemplated hereby, or other announcements to the employees, customers or suppliers of Seller, shall be issued without the joint approval of Buyer and Seller, such approval not to be unreasonably withheld by either Party. No other public announcement related to this Agreement or the transactions contemplated hereby shall be made by either Party, except as required by law, in which event the Parties shall consult as to the form and substance of any such announcement required by law.

11.2   Expenses. Except as set forth in Section 2.3, each Party shall pay all of its expenses in connection with the negotiation of this Agreement, the performance of its obligations under this

SCANNED

JAN 29 2018

From 9853856002                    Tue 09 Jan 2018 04:17:24 PM EST                    Page 25/

Agreement and the other agreements contemplated hereby and the consummation of the transactions contemplated by hereby and thereby.

11.3   Remittances. All remittances, mail and other communications relating to the Purchased Assets or the Assumed Liabilities received by Seller at any time after the Closing Date shall be immediately turned over to Buyer by Seller. Seller shall cooperate with Buyer and take such actions as Buyer reasonably requests.

11.4   Further Assurances. At any time and from time to time after the Closing, at one Party's request and without further consideration, the other Party shall cooperate and execute and deliver such other instruments of sale, conveyance, transfer, assignment, assumption and confirmation and take such further action as either Party may reasonably deem necessary or required in order to effectively convey, transfer and assign to Buyer, and to confirm Buyer's title to, all of the Purchased Assets of Seller, to put Buyer in actual possession and operating control thereof, for Buyer to assume the Assumed Liabilities and to assist Buyer in exercising all rights with respect thereto.

## ARTICLE 11
## MISCELLANEOUS

12.1   Amendment and Waiver. This Agreement may be amended, and any provision of this Agreement may be waived; provided that any such amendment or waiver shall be binding on the Party against whom the amendment is being asserted only if such amendment or waiver is set forth in a writing executed by such Party against whom the amendment is being asserted. No course of dealing between or among any Persons having any interest in this Agreement shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights or obligations of any Person under or by reason of this Agreement.

SCANNED

JAN 2 9 2018

12.2   Notices.  All notices, demands and other communications to be given or delivered under or by reason of the provisions, of this Agreement shall be in writing and shall be deemed to have been given when personally delivered, when mailed by certified mail, return receipt requested, when sent by telecopy with confirmation of receipt received, or when delivered by overnight courier with executed receipt. Notices, demands and communications to Seller or Buyer shall, unless another address is specified in writing in accordance herewith, be sent to the address indicated below:

Notices to Buyer:

Contracts Department
Salient Arms Int., LLC.
Attn: Shehraze Shah
Tel: 703.270.5012
Email: Contracts@salientarms.com

with a copy to:

Salient Arms Int., LLC
1105 Levee Rd, Site 3.
Morgan City, LA 77080
Attn:  Contracts
Tel: 202.838.2075

Notices to Seller:

Adrian Chavez and Aaron Chavez
_____
_____
Tel: _____
email: _____

12.3   Assignment. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assignable by either Party without the prior written consent of the other Party, which shall not be unreasonably withheld.

12.4   Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

12.5   Representation by Counsel. Each Party and its counsel cooperated in the drafting and preparation of this Agreement and the documents referred to herein.  Accordingly, any rule of

SCANNED

JAN 29 2018

law or any legal decision that would require interpretation of any ambiguities in this Agreement against the Party that drafted it is of no application and is hereby expressly waived by each Party.

12.6   Disclaimer of Warranties. BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN ARTICLE 3, NEITHER SELLER NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS HAS MADE, IN CONNECTION WITH BUYER'S INVESTIGATION OF THE PURCHASED ASSETS OR OTHERWISE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING, WITH RESPECT TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION, WRITTEN OR ORAL, RELATING TO THE PURCHASED ASSETS, AND SELLER IS SELLING THE PURCHASED ASSETS ON AN "AS IS, WHERE IS" BASIS AND DISCLAIMS ALL OTHER WARRANTIES, REPRESENTATIONS AND GUARANTEES, WHETHER EXPRESS OR IMPLIED. SELLER AND ITS AFFILIATES MAKE NO REPRESENTATIONS OR WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND NO IMPLIED REPRESENTATIONS OR WARRANTIES AND DISCLAIM ALL SUCH REPRESENTATIONS AND WARRANTIES. WITHOUT LIMITING THE FOREGOING, AND EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 3. BUYER ACKNOWLEDGES AND AGREES THAT NEITHER SELLER NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS SHALL HAVE ANY LIABILITY TO BUYER OR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS RELATING TO OR RESULTING FROM THE USE OF THE BUSINESS INFORMATION OR ANY ERRORS OR INACCURACIES CONTAINED THEREIN OR OMISSIONS THEREFROM, EXCEPT FOR ANY LIABILITY RESULTING FROM THE BREACH OF THE REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS EXPRESSLY SET FORTH IN THIS AGREEMENT. BUYER ALSO AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER IT NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS HAS RELIED UPON ANY REPRESENTATIONS OR WARRANTIES OF ANY NATURE MADE BY OR ON BEHALF OF OR IMPUTED TO SELLER OR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS, AND BUYER ACKNOWLEDGES THAT, IN ENTERING INTO THIS AGREEMENT, IT HAS RELIED SOLELY ON ITS OWN INVESTIGATION OF THE PURCHASED ASSETS BY SELLER OR ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS AND THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, SUBJECT TO THE LIMITATIONS AND RESTRICTIONS SPECIFIED HEREIN.

12.7   Captions. The captions used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and shall not be deemed to limit, characterize or in any way affect any provision of this Agreement, and all provisions of this Agreement shall be enforced and construed as if no caption had been used in this Agreement.

12.8   Complete Agreement. This Agreement and the documents referred to herein contain the complete agreement between the parties and supersede any prior understandings, agreements or representations by or between the parties, written or oral, that may have related to the subject matter hereof in any way.

SCANNED

JAN 29 2018

12.9   **Counterparts**. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

12.10   **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana without reference to the choice of law principles thereof. Buyer and Seller consent to and hereby submit to the jurisdiction of any state or federal court located in the State of Louisiana in connection with any action, suit or proceeding arising out of or relating to this Agreement, and each of the Parties hereto irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

12.11   **WAIVER OF JURY TRIAL**. EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT IT HAS NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT OR INSTRUMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS SET FORTH IN THIS SECTION 12.11.

12.12   **Interpretation**. When the context requires, the gender of all words used herein shall include the masculine, feminine and neuter and the number of all words shall include the singular and plural. The terms "including" as used in this Agreement is used to list items by way of example and shall be deemed to mean "including, but not limited to" wherever used.

12.13   **Disclosure Schedules**. Any information disclosed pursuant to any Disclosure Schedule hereto shall be deemed to be disclosed for all purposes of this Agreement and the other agreements contemplated hereby to the extent the relationship of such matter to such other Disclosure Schedule is reasonably apparent on its face. Neither the specification of any dollar amount or any item or matter in any provision of this Agreement or any of the agreements contemplated hereby nor the inclusion of any specific item or matter in any Disclosure Schedule hereto or thereto is intended to imply that such amount, or higher or lower amounts, or the item or matter so specified or included, or other items or matters, are or are not material, and no Party shall use the fact of the specification of any such amount or the fact of the specification or the fact of inclusion of any such item or matter in any dispute or controversy between the Parties as to whether any item or matter is or is not material for purposes of this Agreement or any of the agreements contemplated hereby. Neither the specification of any item or matter in any provision of this Agreement or any of the agreements contemplated hereby nor the inclusion of any specific item or matter in any Disclosure Schedule hereto or thereto is intended to imply that such item or matter, or other items or matters, are or are not in the ordinary course of business, and no Party shall use the fact of the specification or the fact of the inclusion of any such item or matter in any dispute or controversy between the Parties as to whether any item or matter is or is not in the ordinary course of business for purposes of this Agreement or any agreement contemplated hereby.

SCANNED

JAN 29 2018

IN WITNESS WHEREOF the Parties hereto have executed this Agreement as of the Effective Date.

"BUYER"

SALIENT ARMS INT'L. LLC

By: _____
Name: Shehraze Shah
Title: Partner


"SELLER"

SALIENT ARMS INTERNATIONAL, Inc.

By: _____     By: _____   09/21/12
Name Adrian Chavez                Name Aaron Chavez
Title: President                  Title: Vice President

SCANNED

JAN 2 9 2018

## Appendix I

### Definitions

As used in this Agreement, the following terms shall have the meaning assigned below:

"Affiliate" means any entity that controls, is controlled by or is under common control with the entity in question.

"Agreement" has the meaning assigned to such term in the first sentence of this agreement.

"Assumed Contracts" has the meaning assigned to such term in Section 1.1(g).

"Assumed Liabilities" has the meaning assigned to such term in Section 1.3.

"Basket" has the meaning assigned to such term in Section 9.4.

"Business Day" means any day other than a Saturday, Sunday or any other day on which commercial banks are authorized or required to close in New York City.

"Claim" has the meaning assigned to such term in Section 9.3(a).

"Closing" has the meaning assigned to such term in Section 8.1.

"Closing Date" has the meaning assigned to such term in Section 8.1.

"Closing Payment" has the meaning assigned to such term in Section 2.1.

"Code" has the meaning assigned to such term in Section 2.3.

"Disclosure Schedule" has the meaning assigned to such term in Article 3.

"Effective Date" has the meaning assigned to such term in the first sentence of this Agreement.

"Environmental Laws" means any applicable laws, regulations, ordinances or governmental requirements (including the Comprehensive Environmental Response, Compensation, and Liability Act "CERCLA") relating to the manufacture, importation, distribution, generation, production, installation, use, storage, treatment, transportation, Release, threatened Release, or disposal of Hazardous Materials, noise control, or the protection of human health or safety, natural resources, or the environment, during the period that Seller has operated the Business or occupied the Real Property.

"Excluded Assets" has the meaning assigned to such term in Section 1.2.

"Excluded Liabilities" has the meaning assigned to such term in Section 1.4.

SCANNED

JAN 2 9 2018

From 9853856002                     Tue 09 Jan 2018 04:17:24 PM EST            Page 19 of 25

"Hazardous Materials" means any wastes, substances, radiation, or materials (whether solids, liquids or gases) (i) that are hazardous, toxic, infectious, explosive, radioactive, carcinogenic, or mutagenic; (ii) that are or become defined as a "pollutants," "contaminants," "hazardous materials," "hazardous wastes," "hazardous substances," "chemical substances," "radioactive materials," "solid wastes" or other similar designations in, or otherwise subject to regulation under, any Environmental Laws; or (iii) without limitation, which contain polychlorinated biphenyls (PCBs), friable asbestos and friable asbestos-containing materials, lead-based paints, urea-formaldehyde foam insulation, or petroleum or petroleum products (including crude oil or any fraction thereof).

"Indemnification Cap" has the meaning assigned to such term in Section 9.4.

"Indemnified Party" has the meaning assigned to such term in Section 9.3.

"Indemnifying Party" has the meaning assigned to such term in Section 9.3.

"Instruments of Conveyance" has the meaning assigned to such term in Section 1.4.

"Leases" has the meaning assigned to such term in Section 5.1(j).

"Liens" has the meaning assigned to such term in Section 3.4(b).

"Litigation" means any litigation, legal action, arbitration, proceeding, material demand, material claim or investigation pending or, to the Seller's Knowledge, threatened against, affecting or brought by or against any Seller related to the Purchased Assets, Seller's present or former employees affecting the Purchased Assets.

"Loss" and "Losses" have the meaning assigned to such terms in Section 9.1.

"Nondelivered Asset" has the meaning assigned to such term in Section 1.5.

"Notifying Party" has the meaning assigned to such term in Section 9.3.

"Party" means each of Buyer and Seller and together Buyer and Seller are the "Parties".

"Permitted Encumbrances" means (a) encumbrances for Taxes not yet due and payable, and (b) statutory encumbrances of landlords, carriers, warehousemen, mechanics and materialmen and other similar encumbrances imposed by any applicable law in the ordinary course of business for sums not yet due and payable.

"Person" shall include all natural persons, corporations, business trusts, associations, companies, partnerships, joint ventures and other entities and governments and agencies and political subdivisions.

"Purchase Price" has the meaning assigned to such term in Section 2.1.

"Purchased Assets" has the meaning assigned to such term in Section 1.1.

"Buyer" has the meaning assigned to such term in the first sentence of this Agreement.

SCANNED

JAN 29 2018

"Buyer Indemnified Party" and "Buyer Indemnified Parties" have the meaning assigned to such terms in Section 9.1.

"Buyer Losses" has the meaning assigned to such term in the sentence following Section 9.1(e).

"Real Property" has the meaning assigned to such term in Section 1.1(b).

"Real Property Law" shall mean any applicable building, zoning, subdivision or other land use or similar law, ordinance, regulation, order or decree.

"Real Property Lease" has the meaning assigned to such term in Section 3.4(a).

"Regulatory Approvals" has the meaning assigned to such term in Section 5.1(g).

"Release" has the meaning assigned to such term under CERCLA.

"Seller" has the meaning assigned to such term in the first sentence of this Agreement.

"Seller Indemnified Parties" has the meaning assigned to such term in Section 9.2.

"Seller Losses" has the meaning assigned to such term in Section 9.2.

"Tax" or "Taxes" means net or gross income, gross receipts, excise, sales, personal, or real property, payroll, employment, unemployment, franchise, capital, doing business, net worth, ad valorem, value added, transfer, social security, stamp, recording, documentary, occupancy, withholding, and any other Taxes, fees (including, flowage fees), duties, levies, imposts, or similar charges, including interest, penalties or additions thereto imposed by any taxing authority.

## APPENDICES, SCHEDULES AND EXHIBITS

Appendix I - Definitions

Schedule 1.1 – Purchased Assets

Schedule 1.2 – Excluded Assets

Schedule 1.3 – Assumed Liabilities

Schedule 1.4 – Excluded Liabilities

SCANNED

JAN 29 2018

Salient Arms International Asset Purchase Agreement
Exhibit A

September 21, 2017

Heads of Terms

1. Total Value of sale = $3M – ($500K of debt) to be paid over 60 months. Total monthly payments for the next 5 years will = $41,666 per month
2. To avoid legal risks including (Mike Israilyan revoke of sale) there will be two agreements:
   a. $300K total value of Asset Purchase Agreement
   b. $2.7M total value of Consulting Agreement
3. Insurance (Requires discussion with Shehrazie)
4. Salient (Louisiana) will fulfill pending orders to be estimated at $500K (not to affect the total $2.5M payment).
5. Adrian will audit any and all distributor and dealer claims for unfulfilled orders.
6. Separate lease agreement will be drafted after establishing the required footprint to operate the R&D operations and Assembly. (First 6 months free rent per ding Evike discussion)
7. 10 days per month of consulting by Adrian to lead the R&D, Design, and transition.
8. 10 days per month of consulting by Aaron to lead the marketing efforts and transition.
9. 120 days' notice to renew and renegotiate the existing consulting agreement with Adrian and Aaron.
10. Salient (Louisiana) will have total ownership for all designs produced by Adrian by utilizing the allocated R&D funds for Salient (Louisiana). Adrian will have the option of buying the designs upon Salient's (Louisiana) approval
11. Adrian and Aaron to be named under the Board of Advisors for Salient. (Acceptance of the position is to be confirmed upon Adrian and Aaron's approval)
12. Adrian and Aaron will provide clarity and disclose any possible conflict of interest and will abide by the guidelines set and agreed upon in the agreement. (pending discussion)
13. Salient (Louisiana) reserves the right to terminate the roles and responsibilities for both Adrian and Aaron as board of Advisors and will not affect the compensation of ($2.5M over 5 years)

Signatories

Salient Arms International, Inc.
Adrian Chavez, President
September 21, 2017

Salient Arms International, Inc.
Aaron Chavez, Vice President
September 21, 2017

Salient Arms Int. LLC
Shehrazie Shah, Partner
September 21, 2017

SCANNED

JAN 29 2018

Salient Arms International Asset Purchase Agreement
Exhibit A

September 21, 2017

**Heads of Terms**

1. Total Value of sale = $3M – ($500K of debt) to be paid over 60 months. Total monthly payments for the next 5 years will = $41,666 per month.
2. To avoid legal risks including (Mike Isralkan revoke of sale) there will be two agreements:
   a. $300K total value of Asset Purchase Agreement
   b. $2.2M total value of Consulting Agreement
3. Insurance (Requires discussion with Shehraze)
4. Salient (Louisiana) will fulfill pending orders to be estimated at $500K (not to affect the total $2.5M payment).
5. Adrian will audit any and all distributor and dealer claims for unfulfilled orders.
6. Separate lease agreement will be drafted after establishing the required footprint to operate the R&D operations and Assembly. (First 6 months free rent pending Evike discussion)
7. 10 days per month of consulting by Adrian to lead the R&D, Design, and transition.
8. 10 days per month of consulting by Aaron to lead the marketing efforts and transition.
9. 120 days' notice to renew and renegotiate the existing consulting agreement with Adrian and Aaron.
10. Salient (Louisiana) will have total ownership for all designs produced by Adrian by utilizing the allocated R&D funds for Salient (Louisiana). Adrian will have the option of buying the designs upon Salient's (Louisiana) approval
11. Adrian and Aaron to be named under the Board of Advisors for Salient. (Acceptance of the position is to be confirmed upon Adrian and Aaron's approval)
12. Adrian and Aaron will provide clarity and disclose any possible conflict of interest and will abide by the guidelines set and agreed upon in the agreement. (pending discussion)
13. Salient (Louisiana) reserves the right to terminate the roles and responsibilities for both Adrian and Aaron as board of Advisors and will not affect the compensation of ($2.5M over 5 years)

Signatories

Salient Arms International, Inc.
Adrian Chavez, President
September 21, 2017

Salient Arms International, Inc.
Aaron Chavez, Vice President
September 21, 2017

Salient Arms Inc. LLC
Shehraze Shah, Partner
September 21, 2017

SCANNED

JAN 29 2018

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| Intellectual Property:<br>a.  Technical drawings, representations, schematics, testing related to the following items: SKUs 1 to ? required to produce – TDPs<br>-All Glock Platform mods, Tier 1&2 with and without optics, Glock Trigger, Glock Magwell (Patent pending)<br>-GRY Rifle Platform- Jailbreak (Patent Pending)<br>-BLU-(s,c)-<br>-RED-1911/2011<br>-Berda -?<br>-Bennelli-? | SAI, INC (Nevada) (not officially owned by any entity, but were funded under the SAI INC) | Harddrive in LV office and on Dropbox | •<br>*Trade Dress Copy Right (costs about 8k) needs to be done but currently aren't<br>*List of all TDP |
| b.  Inventions, processes, designs, formulae, procedures, source codes, trade secrets, know-how, industrial models, confidential and technical information, manufacturing, engineering and technical drawings, product specifications, confidential business information, and other proprietary knowledge, including all flow charts, notes, and outlines relating | SAI Inc | | *Craftsmanship *manuals * |
| c.  Patents (including design patents, industrial designs and utility models), patent applications, patent disclosures awaiting filing determination, inventions and improvements | Adrian and Aaron | | *Review stage |

SCANNED
JAN 2 9 2018

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| d.   Trademarks, service marks, domain names, trade names, trade dress, logos, business and product names, slogans, and registrations and applications for registration | Adrian and Aaron-trademark & logo FB & Instagram, Lyfe - Aaron | | *salientarmsinternational.com *www.salientarms.com Social media -FB, Instagrm, Twitter *Lyfe by Salient .com *intl Trademark? |
| e.   Copyrights (including software) and registrations | | | NA |
| All Furniture, Machinery, and Equipment | SAI, Inc | Vegas | Mo has Machinery List -large and small/tools *need list with serial numbers |
| All Permits, Approvals, and Memberships to the extent assignable under applicable Law and which are held or used by the Sellers and relate to the ownership, development and business or operation of the Purchased Assets (i.e. NRA, Gun Clubs) | | | N/A |
| Listed computer hardware, software, and data processing equipment owned or licensed by the Sellers or used in the business or operation. Software used in design and production. – list provision upon inventory count (TBD) | SAI, Inc | Vegas | ? |
| All Inventory – Raw materials and finished goods listed upon inventory count (TBD) | SAI, Inc | Vegas | *lump |

SCANNED
JAN 29 2018

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| All records related to the business, operation or ownership of the Purchased Assets or the operation of Salient Arms International including all customer lists, maintenance records, files, charts, books, records, ledgers, data, databases and documentation relating to the Purchased Assets or ad valorem and sales and use Tax returns and records (but specifically excluding income Tax returns, franchise Tax returns and supporting materials for such returns such as working papers and Tax provisions), and the Healthcare System's policy and procedure manuals, compliance programs, standard operating procedures, operating manuals and files, all data and Records related to the operations of Seller, including client and customer lists and Records, referral sources, research and development reports and Records, 5935217v.1 production reports and Records, service and warranty Records, equipment logs, operating guides and manuals, financial and accounting Records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and Records and, subject to Legal Requirements | SAI, Inc. | Vegas | *customer work orders physical - mostly on dropbox -advertising materials -- signs, promo items, |

SCANNED
JAN 2 9 2018

# Nicholas F. LaRocca, Jr., Ltd.

(A Professional Law Corporation)
607 Brashear Avenue, Morgan City, Louisiana 70380
Mailing Address:  P. O. Box 2466, Morgan City, Louisiana 70381-2466
Telephone:  (985) 385-4800   Fax:  (985) 385-6002
E-mail: nlarocca@laroccalaw.com
URL: www.laroccalaw.com

Nicholas F. LaRocca, Jr.                                    Angela M. Lancon, Paralegal

January 9, 2018

VIA FAX (337) 828-2509

Honorable Cliff Dressel
ATTN: Charlene
Clerk of Court
P.O. Drawer 1231
Franklin, LA 70538

Re:   Salient Arms Int., LLC vs. Salient Arms International, Inc., Adrian
       Chavez and Aaron Chavez

Dear Sir:

Please issue service on the above named defendants, Salient Arms International, Inc., Adrian Chavez and Aaron Chavez pursuant to the Long Arm Statute.

If you have any questions concerning this matter, please do not hesitate to call.  Your assistance in this matter is appreciated.

Sincerely,

NICHOLAS F. LaROCCA, JR., LTD.
(A Professional Law Corporation)

Angela Lancon
Paralegal to Nicholas F. LaRocca, Jr.

Enclosures

SCANNED

JAN 2 9 2018

From 9853856002          Tue 09 Jan 2018 03:38:18 PM EST          Page 40of 4

Sincerely,
Angie Lancon
Paralegal to Nicholas F. LaRocca, Jr.
P.O. Box 2466
Morgan City, LA  70381
985-385-4800 phone
985-385-6002 fax

SCANNED

JAN 2 9 2018

## FAX CONFIRMATION

| | | |
|---|---|---|
| SALIENT ARMS INT. LLC | | STATE OF LOUISIANA |
| Vs. No.  132015  Div "B" |  | 16th JUDICIAL DISTRICT COURT |
| SALIENT ARMS INTERNATIONAL INC, ET AL | | PARISH OF ST. MARY |

*YOU ARE HEREBY INFORMED BY THIS FAX CONFIRMATION NOTICE THAT THE FOLLOWING HAS BEEN FILED BY FACSIMILE.*

*DATE FAX TRANSMISSION RECEIVED:*  **JANUARY 9, 2018**

*DESCRIPTION OF PLEADING:*  **PETITION FOR SPECIFIC PERFORMANCE W/EXHIBITS**

*FILED ON BEHALF OF:*  **SALIENT ARMS INT. LLC**

*ATTORNEY SIGNING PLEADING:*  **NICHOLAS F LAROCCA JR**

This is to acknowledge that the above described facsimile transmission was received and filed on the date shown above as per LA R.S. 13:850.

The original pleading is to be forwarded within seven (7) days of this receipt together with the $5.00 transmission fee; $15.00 fee for this receipt; the correct filing fee to cover the cost of filing and recording the facsimile copy as well as the original pleading and any balance of costs due.  When the original pleading is received, the file mark will indicate the actual date it is received.

The record will contain the facsimile pleading, this receipt and the original pleading.

Receipt Acknowledged

*Charlene M LeBlanc*

Deputy Clerk of Court

Receipt faxed to number: (985)  385-6002

Date receipt faxed:  January 9, 2018

| | |
|---|---|
| Fax Transmission Fee | $5.00 |
| Fax Receipt Fee | $15.00 |
| Filing Fee for Faxed Pleading(s) | $58.00 |
| Filing Fee for Original Pleading (s) | $650.00 |
| **TOTAL AMOUNT DUE** | **$728.00** |

SCANNED

JAN 29 2018

[ ORIGINAL ]

1501019900                                                        P.01/01

TRANSACTION REPORT

                              JAN/09/2018/TUE 04:18 PM

FAX(TX)

| # | DATE | START T. | RECEIVER | COM.TIME | PAGE | TYPE/NOTE | | FILE |
|---|------|----------|----------|----------|------|-----------|---|------|
| 001 | JAN/09 | 04:17PM | LAROCCA, NICHOLAS | 0:00:45 | 1 | MEMORY   OK | G3 | 5717 |

---

## FAX CONFIRMATION

**SALIENT ARMS INT. LLC**                              STATE OF LOUISIANA

**Vs. No. 132015 Div "B"**              **16th JUDICIAL DISTRICT COURT**

**SALIENT ARMS INTERNATIONAL INC, ET AL**                PARISH OF ST. MARY

---

*YOU ARE HEREBY INFORMED BY THIS FAX CONFIRMATION NOTICE THAT THE FOLLOWING HAS BEEN FILED BY FACSIMILE.*

*DATE FAX TRANSMISSION RECEIVED*: **JANUARY 9, 2018**

*DESCRIPTION OF PLEADING*: **PETITION FOR SPECIFIC PERFORMANCE W/EXHIBITS**

*FILED ON BEHALF OF*: **SALIENT ARMS INT. LLC**

*ATTORNEY SIGNING PLEADING*: **NICHOLAS F LAROCCA JR**

This is to acknowledge that the above described facsimile transmission was received and filed on the date shown above as per LA R.S. 13:850.

The original pleading is to be forwarded within seven (7) days of this receipt together with the $5.00 transmission fee; $15.00 fee for this receipt; the correct filing fee to cover the cost of filing and recording the facsimile copy as well as the original pleading and any balance of costs due. When the original pleading is received, the file mark will indicate the actual date it is received.

The record will contain the facsimile pleading, this receipt and the original pleading.

                              **Receipt Acknowledged**

                              *Chalene m Leblanc* SCANNED

                              **Deputy Clerk of Court**   JAN 29 2018

Receipt faxed to number: (985) 385-6002

Date receipt faxed: January 9, 2018

SALIENT ARMS INT., LLC        *     16TH JUDICIAL DISTRICT COURT

VS. NO. 132,015 DIV. "___"     *     PARISH OF ST. MARY

SALIENT ARMS INTERNATIONAL,
INC., ADRIAN CHAVEZ AND
AARON CHAVEZ              *     STATE OF LOUISIANA

---

## PETITION FOR SPECIFIC PERFORMANCE

---

The petition of Salient Arms, Int., LLC ("La. Salient"), a limited liability company organized and existing under the laws of the State of Louisiana, which is domiciled in St. Mary Parish, Louisiana, respectfully alleges that:

1.

The defendants are:

     A.     Salient Arms International, Inc. ("Nevada Salient"), a corporation formed under the laws of the State of Nevada who is domiciled in Las Vegas, Nevada;

     B.     Adrian Chavez ("AC"), a resident of the full age of majority who is domiciled in Las Vegas, Nevada; and

     C.     Aaron Chavez ("Aaron C"), a resident of the full age of majority who is domiciled in Las Vegas, Nevada.

2.

At all pertinent times, AC and Aaron C owned and operated a fire arms manufacturing facility using the trade name Salient Arms.

3.

On or about September 20, 2017, La. Salient offered to purchase certain of the assets of Nevada Salient; Nevada Salient accepted the offer and the parties entered into an Asset Purchase Agreement ("APA"). A complete copy of the APA along with its schedules and exhibits is attached hereto as Exhibit "A".

4.

The APA included the conveyance business records, furniture, machinery and equipment, all inventory, all permits, approvals and memberships relating to the ownership or operation of the business, and all intellectual property, including technical drawings, inventions, processes, designs, formulas, source codes, trade secrets, proprietary knowledge, patents (including design

SCANNED
JAN 29 2018

patents, industrial designs and utility models, patent applications, patent disclosures awaiting filing determination, inventions and improvements), registered in the name of Nevada Salient's two sole shareholders, AC and Aaron C.

5.

Although La. Salient has agreed to complete the above described transaction, defendants, Nevada Salient, Adrian Chavez and Aaron Chavez have failed and refused to recognize the sale or conform to its obligation therein.

6.

Section 9.8 of the APA affords each party the right to seek specific performance and stipulates that injunctive relief may be afforded the non-breaching party without the posting of any security.

7.

Accordingly, petitioner seeks an order of this court granting it specific performance against defendants, and pending the adjudication of the remedy, petitioner seeks an injunction preventing defendants from selling the assets to any other third person, and requiring it to consummate the APA. And complete a closing of this transaction.

WHEREFORE, petitioner, Salient Arms Int., LLC prays that the defendants be served with this petition along with a citation commanding them to appear and answer the allegations herein and that after all delays and due proceedings conducted, defendants, Salient Arms International, Inc., Adrian Chavez and Aaron Chavez be enjoined from its breach of contract and order to complete the transaction in question.

Petitioner further prays that an injunction issue herein ordering defendants to consummate this transaction and not to dispose of or otherwise encumber the assets described above pending a conclusion of this civil action.

SCANNED

JAN 29 2018

RESPECTFULLY SUBMITTED BY:

NICHOLAS F. LaROCCA, JR., LTD.
(A Professional Law Corporation)

By:
NICHOLAS F. LaROCCA, JR. (B.R. #8045)
607 Brashear Avenue
Post Office Box 2466
Morgan City, LA 70381-2466
Telephone: (985) 385-4800

A FACSIMILE OF THIS PLEADING
WAS RECEIVED AND FILED ON

JAN 09 2018

PLEASE FURNISH A CERTIFIED COPY OF THE PETITION ALONG WITH CITATION
FOR EACH DEFENDANT FOR SERVICE PURSUANT TO THE LOUISIANA LONG ARM
STATUTE

RECEIVED AND FILED

JAN 29 2018

Dy. Clerk of Court

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement"), dated as of September 20, 2017, (the "Effective Date") is entered into Salient Arms International, LLC represented by Adrian Chavez and Aaron Chavez, with address in Las Vegas, NV 89119 in the State of Nevada ("Seller"), and SALIENT ARMS INT, LLC ("Buyer"), a Company organized under the laws of the State of Louisiana.

### RECITALS

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer certain assets of Seller on the terms and subject to the conditions set forth herein.

WHEREAS, on September 21, 2017, Buyer and Seller each executed a certain document titled Heads of Terms, which is attached hereto as Exhibit A.

WHEREAS, Buyer drafted this Asset Purchase Agreement which, among other things, incorporates in greater detail the terms set forth in Exhibit A.

WHEREAS, Buyer and Seller agree that the terms of Exhibit A are binding and enforceable and if there is any discrepancy between Exhibit A and this Agreement, then the terms of Exhibit A are to supersede the terms of this Agreement.

WHEREAS, Buyer agrees that Seller has 10 days from the date of this Agreement propose changes and/or revisions to this Agreement only, which changes and/or revisions would only be binding should they be in writing, signed by both parties, and do not conflict with or otherwise nullify the terms set forth in Exhibit A.

Shehraze Shah
Partner
Salient Arms Int., LLC

Adrian Chavez
President
Salient Arms International, Inc.

Aaron Chavez
Vice President
Salient Arms International, Inc.

NOW, THEREFORE, in consideration of the mutual agreements, covenants, representations and warranties herein contained, the parties, intending to be legally bound, hereby agree as follows:

### ARTICLE 1
### PURCHASE AND SALE OF ASSETS

1.1        At the Closing, on and subject to the terms and conditions of this Agreement, Buyer shall purchase from Seller, and Seller shall, convey, assign, transfer and deliver to Buyer the assets

SCANNED

JAN 29 2018

A FACSIMILE OF THIS PLEADING
WAS RECEIVED AND FILED ON

JAN 09 2018

EXHIBIT
"A"

RECEIVED AND FILED

JAN 29 2018

Dy. Clerk of Court

(the "Purchased Assets"), provided however, that the Purchased Assets shall not include any of the Excluded Assets:

1.1.1        Purchased Assets:  all and other executory commitments of Seller entered into in connection with this Purchase Agreement, and with emphasis on assets which are detailed in Schedule 1.1, attached hereto.

1.2      Assumption and Exclusion of Liabilities:  In addition to the obligations of the Buyer for the Purchased Assets, Buyer agrees to assume those liabilities specifically identified below (collectively, the "Assumed Liabilities"). The assumed liabilities are as follows:

1.  Fulfillment of orders for Osage Group, not to exceed $223,418.86
2.  Fulfillment of orders for Ingen, not to exceed $271,569.12
3.  Fulfillment of individual/direct customer, not to exceed [$60,000]

Seller shall retain, and Buyer shall not assume, any other liabilities, obligations or undertakings of Seller of any nature whatsoever, whether accrued, absolute, fixed or contingent, known or unknown, due or to become due, unliquidated or otherwise (collectively, the "Excluded Liabilities") including any liabilities relating to (a) all accrued liabilities and debts owed to third parties by Seller or its Affiliates.

1.2.1       Excluded Liabilities: Taxes with respect to or attributable to the Purchased Assets for all taxable periods, or any portion thereof, up to and including the Closing Date, (c) any liabilities associated with the Excluded Assets, (d) any liabilities associated with the Purchased Assets that arose or relate to events that occurred prior to the Closing Date (including liabilities arising under Environmental Laws) and, (e) all of the liabilities, obligations and undertakings of the Seller arising prior to the Closing Date and not expressly assumed by Buyer in connection with the Assumed Liabilities.

1.3      Instruments of Conveyance. The conveyance, assignment, transfer and delivery of the Purchased Assets will be effected by evidence of execution and delivery by Seller to Buyer of such assignment and assumption agreements, patent and trademark assignments, and other instruments of transfer, all dated as of the Closing and mutually agreed to by the parties, as shall be necessary to effectively vest in Buyer good and marketable title in the Purchased Assets (the "Instruments of Conveyance").

1.4      Nondelivered Assets. Notwithstanding anything else contained in this Agreement, in the event that a Purchased Asset is not delivered by Seller to Buyer at Closing (a "Nondelivered Asset"), Seller shall deliver such Purchased Asset to Buyer as soon as Seller has actual knowledge of the existence of such Nondelivered Asset.

SCANNED

JAN 2 9 2018

## ARTICLE 2
### PURCHASE PRICE; OTHER CONSIDERATION

2.1     Purchase Price. The Purchase Price is Three Hundred Thousand Dollars ($300,000) and will be paid over 60 months at Five Thousand Dollars ($5,000) per month to Seller on the 5ˢᵗ day of every month after Closing.

2.2     Allocation of Purchase Price. With regard to all Taxes, the allocation of the Purchase Price to the Purchased Assets shall be in accordance with their fair market value and shall be consistent with Section 1060 of the Internal Revenue Code of 1986, as amended and the regulations thereunder (the "Code"). The parties shall use their best efforts prior to Closing to reach an agreement on such allocation, but such agreement shall not be a condition of the Closing. If no agreement is reached within thirty days after the Closing, Buyer shall have the right to refer such matter to a nationally recognized firm of independent public accountants agreed upon by Buyer and Seller. The determination made by such firm shall be conclusive and non-appealable. The fees and disbursements of such firm shall be borne equally by Buyer and Seller. Seller and Buyer shall timely file a Form 8594 with the Internal Revenue Service in connection therewith. For purposes of the Code, Seller and Buyer agree to report the transactions contemplated by this Agreement in a manner consistent with such allocation. In addition, Buyer and Seller agree to provide each other with their respective Federal Tax Identification numbers at Closing for purposes of reporting this transaction to the Internal Revenue Service.

2.3     Transaction Related Costs and Taxes. Buyer shall not be responsible for any income and gains Taxes payable in connection with the transfer of the Purchased Assets to Buyer prior to the date of closing. Seller shall be responsible for any income realized form any of the Excluded Assets. Each party shall bare its own cost associated to closing.

## ARTICLE 3
### SELLER'S REPRESENTATIONS AND WARRANTIES

3.1     Seller represents and warrants to Buyer that the statements contained in this Article 3 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Article 3), except as set forth on the disclosure schedule delivered by Seller to Buyer on the date hereof (the "Disclosure Schedule").

3.2     Organization.

Sellers are Individuals acting collectively as Salient Arms International, Inc. and are duly qualified to do business and in good standing in the State of Nevada. No subsidiaries or other Affiliates of Seller own any of the Purchased Assets.

3.3     Authorization; No Breach. The execution, delivery and performance of this Agreement and any other agreements contemplated hereby and consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by Seller, as appropriate. No vote or other approval or consent of any other Person is required for Seller to execute, deliver and perform this Agreement and the other agreements contemplated hereby or to consummate the transactions contemplated hereby and thereby. Other than such actions that have already been

taken, no corporate act or proceeding on the part of Seller is necessary to authorize the execution, delivery or performance of this Agreement, any other agreement contemplated hereby or the consummation of the transactions contemplated hereby or thereby. This Agreement has been duly executed and delivered by Seller and constitutes a valid and binding obligation of Seller enforceable in accordance with its terms. The execution, delivery and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby, do not and will not (a) conflict with or result in any breach of any of the provisions of, (b) constitute a default under, result in a violation of, or cause the acceleration of any obligation under, (c) result in the creation of any lien, security interest, charge or encumbrance upon any of the Purchased Assets hereunder, (d) result in the triggering of any rights of first refusal or other similar rights, require any authorization, consent, approval or exemption or require any action by or notice to any court or other governmental body under (i) the provisions of the certificate of incorporation, bylaws, regulations or organizational documents of Seller, (ii) any law, statute, rule, regulation, judgment, order, agreement or decree to which Seller is subject or by which any of the Purchased Assets is bound, or (iii) any partnership, joint venture, contract or other agreement to which Seller is a party or by which it is bound.

3.4    Title and Condition of Purchased Assets:

3.4.1    Schedule 1.1 contains a list of the Purchased Assets including patents, trademarks, and all Intellectual Property (IP) associated with Salient Arms International, Inc. that are under the name of Adrian and Aaron Chavez. Seller has delivered to Buyer complete and accurate documentary evidence of each Purchased Asset, and notice of whether the Purchased Assets have been modified from the terms set forth in such copy in any respect. Seller is not, and no other party is, in material default of any Purchased Asset, and no party to any Purchased Asset has the right to otherwise modify any Purchased Asset, including upon the giving of notice or the passage of time. The Purchased Assets do not and have not violated in any material way any law, ordinance, regulation or other governmental order, and Seller has not received notice of any pending or threatened legal or statutory action regarding any of the Purchased Assets. Seller owns, or at or prior to Closing will own, good and marketable title, free and clear of all liens, charges, security interests, encumbrances and claims of others whatsoever (hereinafter referred to as "Liens") other than the Permitted Encumbrances, to all of the Purchased Assets. At the Closing, Seller shall convey good and marketable title to all of the Purchased Assets, free and clear of all Liens, other than the Permitted Encumbrances and Liens for current Taxes not yet due and payable which shall be prorated in accordance with Section 2.2.

3.5    Contracts and Commitments:

3.5.1    The list of Purchased Assets on Schedule 1.1 includes the following contracts and/or other agreements (or, in the case of oral contracts, sets forth written summaries thereof) by or to which the Purchased Assets are bound or subject;

3.5.2    Any agreements that limit or purport to limit the ability of Seller to own, operate, sell, transfer, pledge or otherwise dispose of any Purchased Assets;

3.5.3    Seller has supplied Buyer with a true and correct copy of all Agreements and/or Contracts together with all amendments, waivers or other changes thereto.

SCANNED

JAN 29 2018

3.6   Litigation; Proceedings. There is no Litigation that seeks to prevent the consummation of the transaction contemplated by this Agreement. The Purchased Assets are not subject to any judgment, injunction, decree, order or other determination of a court or governmental authority.

## ARTICLE 4
## BUYER'S REPRESENTATIONS AND WARRANTIES

4.1   Buyer represents and warrants to Seller that the statements contained in this Article 4 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Article 4), except as specifically qualified by the terms of such warranty or representation.

4.2   Corporate Organization and Power. Buyer is a Limited Liability Corporation in the State of Louisiana. Buyer has full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

4.3   Authorization and Enforceability. The execution, delivery and performance by Buyer of this Agreement and the other agreements contemplated hereby and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all requisite action, and no other proceedings on the part of Buyer is necessary to authorize the execution, delivery or performance of this Agreement or the other agreements contemplated hereby. This Agreement, and the other agreements contemplated hereby, constitute a valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms.

4.4   No Violation. Buyer is not subject to or obligated under its articles of incorporation, any applicable law, rule or regulation of any governmental authority, or any agreement or instrument, or any license, franchise or permit, or subject to any order, writ, injunction or decree that would be breached or violated by its execution, delivery or performance of this Agreement or the other agreements contemplated hereby. Buyer shall comply in all material respects with all applicable laws, and with all applicable rules and regulations of all governmental authorities in connection with its execution, delivery and performance of this Agreement and the other agreements contemplated hereby and the transactions contemplated hereby and thereby.

## ARTICLE 5
## PRE-CLOSING COVENANTS

5.1   Negative Covenants. Prior to the Closing, Seller shall not in any instance where the described action or inaction will, directly or indirectly, affect the Purchased Assets, without the prior written consent of Buyer:

5.1.1   sell, transfer, lease, assign, pledge or otherwise mortgage any asset or create or permit any Lien to be placed on any asset, other than in the ordinary course of business consistent with past practice;

5.1.2   take any action that would result in any representation and warranty of Seller becoming untrue in any material respects as of the Closing Date;

SCANNED

JAN 2 9 2018

5

## ARTICLE 6
### CLOSING CONDITIONS – BUYER

6.1     The obligation of Buyer to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions on or before the Closing Date:

6.2     Representations and Warranties. The representations and warranties set forth in Article 3 hereof shall be true and correct at and as of the Closing Date as though then made and as though the Closing Date was substituted for the Effective Date.

6.3     Covenants. Seller shall have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement prior to the Closing.

6.4     Government Compliance and Approvals. All governmental filings, authorizations and approvals that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained on terms and conditions reasonably satisfactory to Buyer prior to the Closing date.

6.5     Third Party Consents. All material consents, if any, by third parties that are required for the transfer of the Purchased Assets to Buyer as contemplated hereby or that are required to prevent a breach of, or a default under or a termination or modification of, any Purchased Asset shall have been obtained.

6.6     No Action or Court Order. No action or proceeding before any court or government body shall be pending or threatened that seeks to prevent the carrying out of this Agreement or any of the transactions contemplated hereby, declare unlawful the transactions contemplated by this Agreement or cause such transactions to be rescinded.

6.7     Performance Obligations. All proceedings to be taken by Seller in connection with the consummation of the Closing and the other transactions contemplated hereby and all certificates, instruments and other documents required to affect the transactions contemplated hereby reasonably requested by Buyer shall be satisfactory in form and substance to Buyer and its counsel.

Any conditions specified in this Article 6 may be waived by Buyer; provided that no such waiver shall be effective unless it is set forth in a writing executed by Buyer.

## ARTICLE 7
### CLOSING CONDITIONS - SELLER

7.1     The obligation of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions on or before the Closing Date:

7.2     Representations and Warranties. The representations and warranties set forth in Article 4 hereof shall be true and correct in all material respects at and as of the Closing as though then made and as though the Closing Date was substituted for the Effective Date throughout such representations and warranties.

SCANNED

JAN 2 9 2018

7.3    Covenants. Buyer shall have performed in all material respects all of the covenants and agreements required to be performed by it under this Agreement prior to Closing. Buyer acknowledges and agrees that on the Closing Date, Seller shall cease and permanently discontinue all uses of the "Salient Arms International" and/or all associated name or names associated with "Salient Arms International" name, any trademarks associated therewith and any derivatives thereof (together, the "Salient Arms International") and, any trademarks associated therewith and any derivatives thereof and complete the removal of the Salient Arms International name and Salient Arms International name from all assets, properties and materials of or related to the Business, including all products, technical information and promotional materials. Notwithstanding the foregoing, Seller, agrees that from and after the Closing Date that Seller (a) will not expressly, or by implication, do business as or represent themselves as Buyer, or (b) with respect to products or services sold or provided by them after the Closing Date, will not represent that such products or services are those of Seller. Seller, acknowledges and agrees that Seller shall not have any rights in Salient Arms International and Seller shall not contest the ownership or validity of any rights of Buyer in or to the Salient Arms International name.

7.4    Performance Obligations. All proceedings to be taken by Buyer in connection with the consummation of the Closing and the other transactions contemplated hereby and all certificates, opinions, instruments and other documents required to affect the transactions contemplated hereby reasonably requested by Seller shall be reasonably satisfactory in form and substance to Seller and its counsel.

7.5    Government Compliance and Approvals. All governmental filings, authorizations and approvals that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained on terms and conditions reasonably satisfactory to Seller, including all Regulatory Approvals.

7.6    Third Party Consents. Any and all material consents or approvals required by third parties, to include the Assignment and Change of Owner name for the Purchased Assets with the United States Patent and Trademark Office, for the transfer of the Purchased Assets to Buyer as contemplated hereby or that are required to prevent a breach of, or a default under or a termination or modification of any Assumed Liability to which Seller is a party or to which any of the Purchased Assets is subject, shall have been obtained by Seller.

7.7    No Actions or Court Orders. No action or proceeding before any court or government body shall be pending or threatened that would (i) prevent the carrying out of this Agreement or any of the transactions contemplated hereby, (ii) declare unlawful the transactions contemplated by this Agreement or (iii) cause such transactions to be rescinded.

## ARTICLE 8
## CLOSING MATTERS

8.1    The Closing.    The consummation of the transactions contemplated by this Agreement (the "Closing") shall take place on the effective date at a time and location, to be mutually agreed upon by the Parties, (the "Closing Date").

8.2     Actions to Be Taken at the Closing. The sale, conveyance, assignment and delivery of the Purchased Assets and the payment of the Closing Payment pursuant to the terms of this Agreement shall take place at the Closing; and, simultaneously, the other transactions contemplated by this Agreement shall take place by the delivery of all of the closing documents set forth in Section 8.3 below.

8.3     Closing Documents.

Seller shall deliver to Buyer at the Closing the following documents, duly executed by Seller where necessary to make them effective:

(a)     any authorizations, consents or approvals required pursuant to Sections 7.5 and 7.6;

(d)     a certificate dated the Closing Date, signed by an authorized officer of Seller, to the effect that the conditions set forth in Sections 7.1, 7.2, 7.3 and 7.4 have been satisfied; and

(e)     such other instruments of sale, transfer, assignment, conveyance and delivery as are required in order to transfer to Buyer good and marketable title to the Purchased Assets, free and clear of all liens, charges, security interests and other encumbrances, except for Permitted Encumbrances, or as may reasonably be requested by Buyer.

All of the foregoing documents in this Section 8.3 shall be reasonably satisfactory in form and substance to Buyer and its counsel and shall be dated as of the Closing Date.

8.4     Buyer shall deliver to Seller at the Closing the following documents, duly executed by Buyer where necessary to make them effective:

(a)     the amount of the Closing Payment;

(b)     the Instruments of Conveyance;

(c)     such assignment agreements as may be required to assign the Assumed Applications;

(d)     a certificate dated the Closing Date, signed by an authorized officer, to the effect that the conditions set forth in Sections 7.1 and 7.2 have been satisfied; and

(e)     such other instruments of assignment and assumption, as may be reasonably be requested by Seller.

All of the foregoing documents in this Section 8.4 shall be reasonably satisfactory in form and substance to Seller and shall be dated as of the Closing Date.

8.5     Possession. Simultaneously with the Closing, Seller shall cooperate with Buyer and take such steps as are reasonably necessary to put Buyer in actual possession and operating control of the Purchased Assets.

SCANNED

JAN 2 9 2018

8.6     Efforts to Consummate Closing Transactions. On the terms and subject to the conditions contained in this Agreement, Seller and Buyer agree to work in good faith to take, or to cause to be taken, all reasonable actions, and to do, or to cause to be done, all reasonable things, necessary, proper or advisable under applicable laws and regulations, to consummate, as soon as reasonably practicable, the Closing, including the satisfaction of all conditions set forth herein.

## ARTICLE 9
## INDEMNIFICATION

9.1     Indemnification by Seller. Seller agrees to indemnify Buyer and its officers, managers, partners, employees, affiliates, agents, members, successors and assigns (each, a "Buyer Indemnified Party" and, collectively, the "Buyer Indemnified Parties") and hold them harmless from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens, attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for damages sustained by Buyer or Buyer's entity arising out of: (1) the negligent acts, omissions, negligence or willful misconduct of Seller in the performance of its obligations pursuant to this Agreement; (2) any misrepresentation made by Seller in this Agreement; (3) any breach of this Agreement by Seller; or (4) the failure of Seller to comply with, and any liabilities arising under, any Applicable Law. For the sake of clarity, the Parties agree that consequential damages suffered by a third party which are an element of loss subject to indemnification hereunder shall be considered direct damages of the Buyer hereunder.

9.1.1   any misrepresentation in any of the representations or breach of any of the warranties of Seller contained in this Agreement or in any agreements, exhibits, schedules, certificates or annexes delivered or to be delivered pursuant to the terms of this Agreement or otherwise incorporated in this Agreement;

9.1.2   any breach of, or failure to perform, any agreement or covenant of Seller contained in this Agreement including the failure to comply with the provisions of this Article 9;

9.1.3   any Claims against any of Buyer Indemnified Parties arising out of the use, ownership or operation of the Purchased Assets prior to the Closing; or

9.1.4   any Excluded Liabilities.

All of the foregoing items in subsections 9.1.1 – 9.1.4 are collectively known as the "Buyer Losses."

9.2     Indemnification by Buyer. Buyer agrees to indemnify Seller, and its officers, directors, managers, partners, employees, agents, and shareholders (each, a "Seller Indemnified Party", and, collectively, the "Seller Indemnified Parties"), and hold them harmless against any Losses that any of the Seller Indemnified Parties may suffer, sustain or become subject to, directly or indirectly, as a result of:

9.2.1   any misrepresentation in any of the representations or breach of any of the warranties of Buyer contained in this Agreement or in any agreements, exhibits, schedules,

SCANNED
JAN 2018

certificates or annexes delivered or to be delivered pursuant to the terms of this Agreement or otherwise incorporated in this Agreement;

       9.2.2  any breach of, or failure to perform, any agreement or covenant of Buyer contained in this Agreement, including assuming the Assumed Liabilities, the Assumed Contracts and the provisions of this Article 9; or,

       9.2.3  any Claims against any of the Seller Indemnified Parties with respect to the Purchased Assets subsequent to Closing.

All of the foregoing items in subsections 9.2.1 – 9.2.3) are collectively known as the "Seller Losses."

    9.3    Method of Asserting Claims. As used herein, an "Indemnified Party" shall refer to a "Buyer Indemnified Party" or "Seller Indemnified Party," as applicable, the "Notifying Party" shall refer to the party entitled to indemnification hereunder, and the "Indemnifying Party" shall refer to the party(ies) hereto obligated to indemnify such Notifying Party's Indemnified Parties.

       9.3.1  In the event that any of the Indemnified Parties is made a defendant in or party to any action or proceeding, judicial or administrative, instituted by any third party, the liabilities for which, or the costs or expenses of which, are Seller Losses or Buyer Losses, as the case may be, (any such third-party action or proceeding being referred to as a "Claim"), the Notifying Party shall give the Indemnifying Party prompt notice thereof. The failure to give such notice shall not affect any Indemnified Party's ability to seek reimbursement except to the extent such failure adversely affects the Indemnifying Party's ability to defend successfully a Claim. The Indemnifying Party shall be entitled to contest and defend such Claim. Such defense shall not relieve the Indemnifying Party of its liability under this Article 9 for any Loss to the Notifying Party relating to such Claim. Notice of the intention to contest and defend shall be given by the Indemnifying Party to the Notifying Party within fifteen (15) Business Days after the Notifying Party's notice of such Claim (but in all events as soon as possible prior to the date such Claim is due to be filed). Such contest and defense shall be conducted by counsel employed by the Indemnifying Party. The Notifying Party shall be entitled at any time, at its own cost and expense (which expense shall not constitute a Loss), to participate in such contest and defense and to be represented by attorneys of its or their own choosing. If the Notifying Party elects to participate in such defense, the Notifying Party shall cooperate with the Indemnifying Party in the conduct of such defense. Neither the Notifying Party nor the Indemnifying Party may concede, settle or compromise any Claim without the consent of the other party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, in the event the Indemnifying Party fails or is not entitled to contest and defend a Claim, the Notifying Party shall be entitled to contest, defend and settle such Claim in such manner and on such terms as the Notifying Party may deem appropriate, and the Indemnifying Party shall be liable for the Losses of the Notifying Party in accordance with the provisions of this Article 9.

       9.3.2  In the event any Indemnified Party should have a claim against any Indemnifying Party that does not involve a Claim, the Notifying Party shall deliver a notice of such claim with reasonable promptness to the Indemnifying Party.

SCANNED

JAN 29 2018

9.4     Limits on Indemnification. With respect to any Claims arising under Section 9.1 or 9.2, the Indemnified Party shall not be entitled to indemnification until the aggregate Losses suffered by such party, or its successors and assigns, in connection with any breach of this Agreement exceeds $10,000 (the "Basket"), whereupon, the Indemnified Party shall be entitled to indemnification hereunder from the Indemnifying Party for the aggregate Losses suffered exceeding the amount of the Basket. With respect to any such claims arising under Section 9.1 or 9.2, no Indemnifying Party shall be liable for indemnification under this Article 9 for amounts in the aggregate, exceeding the Purchase Price (the "Indemnification Cap").

9.5     Survival. The representations and warranties set forth in this Agreement or in any writing delivered to Buyer or Seller in connection with this Agreement shall survive the Closing Date for a period of twelve (12) months.

9.6     Sole Remedy. Except in the case of fraud or intentional misrepresentation, the provisions and procedures set forth in this Article 9 shall constitute the Parties' exclusive rights and remedies for any breach of this Agreement.

9.7     Tax Treatment and Indemnity Payments. All indemnification payments made under this Agreement shall be treated as adjustments to the Purchase Price for Tax purposes.

9.8     Specific Performance. Each Party acknowledges that, in case of any breach of its respective covenants, agreements or other obligations hereunder, the non-breaching Party would suffer immediate and irreparable harm.   Accordingly, notwithstanding anything herein to the contrary, in case of any such breach or threatened breach, the non-breaching Party shall be entitled (in addition to any remedy that may be available at law or in equity (including monetary damages) to seek and obtain (a) a decree or order of specific performance to enforce the observance and performance of such covenant, agreement or obligation (including the obligation of Buyer to consummate the Closing) or (b) an injunction restraining such breach or threatened breach. Each Party agrees that no other Party or any other Person shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 9.8, and each Party irrevocably waives any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument.

## ARTICLE 10
## ADDITIONAL AGREEMENTS

11.1     Press Release and Announcements. No press release related to this Agreement or the transactions contemplated hereby, or other announcements to the employees, customers or suppliers of Seller, shall be issued without the joint approval of Buyer and Seller, such approval not to be unreasonably withheld by either Party. No other public announcement related to this Agreement or the transactions contemplated hereby shall be made by either Party, except as required by law, in which event the Parties shall consult as to the form and substance of any such announcement required by law.

11.2     Expenses. Except as set forth in Section 2.3, each Party shall pay all of its expenses in connection with the negotiation of this Agreement, the performance of its obligations under this

SCANNED

JAN 2 9 2018

Agreement and the other agreements contemplated hereby and the consummation of the transactions contemplated by hereby and thereby.

11.3    Remittances. All remittances, mail and other communications relating to the Purchased Assets or the Assumed Liabilities received by Seller at any time after the Closing Date shall be immediately turned over to Buyer by Seller.  Seller shall cooperate with Buyer and take such actions as Buyer reasonably requests.

11.4    Further Assurances. At any time and from time to time after the Closing, at one Party's request and without further consideration, the other Party shall cooperate and execute and deliver such other instruments of sale, conveyance, transfer, assignment, assumption and confirmation and take such further action as either Party may reasonably deem necessary or required in order to effectively convey, transfer and assign to Buyer, and to confirm Buyer's title to, all of the Purchased Assets of Seller, to put Buyer in actual possession and operating control thereof; for Buyer to assume the Assumed Liabilities and to assist Buyer in exercising all rights with respect thereto.

## ARTICLE 11
## MISCELLANEOUS

12.1    Amendment and Waiver. This Agreement may be amended, and any provision of this Agreement may be waived; provided that any such amendment or waiver shall be binding on the Party against whom the amendment is being asserted only if such amendment or waiver is set forth in a writing executed by such Party against whom the amendment is being asserted.  No course of dealing between or among any Persons having any interest in this Agreement shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights or obligations of any Person under or by reason of this Agreement.

SCANNED

Jan 2 9 2018

12.2    Notices.  All notices, demands and other communications to be given or delivered under or by reason of the provisions, of this Agreement shall be in writing and shall be deemed to have been given when personally delivered, when mailed by certified mail, return receipt requested, when sent by telecopy with confirmation of receipt received, or when delivered by overnight courier with executed receipt.  Notices, demands and communications to Seller or Buyer shall, unless another address is specified in writing in accordance herewith, be sent to the address indicated below:

Notices to Buyer:

Contracts Department
Salient Arms Int., LLC .
Attn: Shehraze Shah
Tel:  703.270.5012
Email: Contracts@salientarms.com

with a copy to:

Salient Arms Int., LLC
1105 Levee Rd, Site 3.
Morgan City, LA 77080
Attn:  Contracts
Tel:  202.838.2075

Notices to Seller:

Adrian Chavez and Aaron Chavez

_____

Tel: _____
email: _____

12.3    Assignment. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assignable by either Party without the prior written consent of the other Party, which shall not be unreasonably withheld.

12.4    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

12.5    Representation by Counsel. Each Party and its counsel cooperated in the drafting and preparation of this Agreement and the documents referred to herein.  Accordingly, any rule of

SCANNED

JAN 2 9 2018

(13)

law or any legal decision that would require interpretation of any ambiguities in this Agreement against the Party that drafted it is of no application and is hereby expressly waived by each Party.

    12.6   Disclaimer of Warranties. BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN ARTICLE 3, NEITHER SELLER NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS HAS MADE, IN CONNECTION WITH BUYER'S INVESTIGATION OF THE PURCHASED ASSETS OR OTHERWISE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING, WITH RESPECT TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION, WRITTEN OR ORAL, RELATING TO THE PURCHASED ASSETS, AND SELLER IS SELLING THE PURCHASED ASSETS ON AN "AS IS, WHERE IS" BASIS AND DISCLAIMS ALL OTHER WARRANTIES, REPRESENTATIONS AND GUARANTEES, WHETHER EXPRESS OR IMPLIED. SELLER AND ITS AFFILIATES MAKE NO REPRESENTATIONS OR WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND NO IMPLIED REPRESENTATIONS OR WARRANTIES AND DISCLAIM ALL SUCH REPRESENTATIONS AND WARRANTIES. WITHOUT LIMITING THE FOREGOING, AND EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 3. BUYER ACKNOWLEDGES AND AGREES THAT NEITHER SELLER NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS SHALL HAVE ANY LIABILITY TO BUYER OR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS RELATING TO OR RESULTING FROM THE USE OF THE BUSINESS INFORMATION OR ANY ERRORS OR INACCURACIES CONTAINED THEREIN OR OMISSIONS THEREFROM, EXCEPT FOR ANY LIABILITY RESULTING FROM THE BREACH OF THE REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS EXPRESSLY SET FORTH IN THIS AGREEMENT. BUYER ALSO AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER IT NOR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS HAS RELIED UPON ANY REPRESENTATIONS OR WARRANTIES OF ANY NATURE MADE BY OR ON BEHALF OF OR IMPUTED TO SELLER OR ANY OF ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS, AND BUYER ACKNOWLEDGES THAT, IN ENTERING INTO THIS AGREEMENT, IT HAS RELIED SOLELY ON ITS OWN INVESTIGATION OF THE PURCHASED ASSETS BY SELLER OR ITS AFFILIATES OR THEIR RESPECTIVE RELATED PERSONS AND THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, SUBJECT TO THE LIMITATIONS AND RESTRICTIONS SPECIFIED HEREIN.

    12.7   Captions. The captions used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and shall not be deemed to limit, characterize or in any way affect any provision of this Agreement, and all provisions of this Agreement shall be enforced and construed as if no caption had been used in this Agreement.

    12.8   Complete Agreement. This Agreement and the documents referred to herein contain the complete agreement between the parties and supersede any prior understandings, agreements or representations by or between the parties, written or oral, that may have related to the subject matter hereof in any way.

SCANNED

JAN 2 9 2018

12.9    Counterparts. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

12.10    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana without reference to the choice of law principles thereof. Buyer and Seller consent to and hereby submit to the jurisdiction of any state or federal court located in the State of Louisiana in connection with any action, suit or proceeding arising out of or relating to this Agreement, and each of the Parties hereto irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

12.11    WAIVER OF JURY TRIAL. EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT IT HAS NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT OR INSTRUMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS SET FORTH IN THIS SECTION 12.11.

12.12    Interpretation. When the context requires, the gender of all words used herein shall include the masculine, feminine and neuter and the number of all words shall include the singular and plural. The terms "including" as used in this Agreement is used to list items by way of example and shall be deemed to mean "including, but not limited to" wherever used.

12.13    Disclosure Schedules. Any information disclosed pursuant to any Disclosure Schedule hereto shall be deemed to be disclosed for all purposes of this Agreement and the other agreements contemplated hereby to the extent the relationship of such matter to such other Disclosure Schedule is reasonably apparent on its face. Neither the specification of any dollar amount or any item or matter in any provision of this Agreement or any of the agreements contemplated hereby nor the inclusion of any specific item or matter in any Disclosure Schedule hereto or thereto is intended to imply that such amount, or higher or lower amounts, or the item or matter so specified or included, or other items or matters, are or are not material, and no Party shall use the fact of the specification of any such amount or the fact of the specification or the fact of inclusion of any such item or matter in any dispute or controversy between the Parties as to whether any item or matter is or is not material for purposes of this Agreement or any of the agreements contemplated hereby. Neither the specification of any item or matter in any provision of this Agreement or any of the agreements contemplated hereby nor the inclusion of any specific item or matter in any Disclosure Schedule hereto or thereto is intended to imply that such item or matter, or other items or matters, are or are not in the ordinary course of business, and no Party shall use the fact of the specification or the fact of the inclusion of any such item or matter in any dispute or controversy between the Parties as to whether any item or matter is or is not in the ordinary course of business for purposes of this Agreement or any agreement contemplated hereby.

SCANNED
JAN 2 9 2018

IN WITNESS WHEREOF the Parties hereto have executed this Agreement as of the Effective Date.

"BUYER"

SALIENT ARMS INT'. LLC

By: _____
Name: Shehraze Shah
Title: Partner


"SELLER"

SALIENT ARMS INTERNATIONAL, Inc.

By: _____
Name Adrian Chavez
Title: President

By: _____  09/21/17
Name Aaron Chavez
Title: Vice President

SCANNED

JAN 29 2018

Appendix I

Definitions

As used in this Agreement, the following terms shall have the meaning assigned below:

"Affiliate" means any entity that controls, is controlled by or is under common control with the entity in question.

"Agreement" has the meaning assigned to such term in the first sentence of this agreement.

"Assumed Contracts" has the meaning assigned to such term in Section 1.1(g).

"Assumed Liabilities" has the meaning assigned to such term in Section 1.3.

"Basket" has the meaning assigned to such term in Section 9.4.

"Business Day" means any day other than a Saturday, Sunday or any other day on which commercial banks are authorized or required to close in New York City.

"Claim" has the meaning assigned to such term in Section 9.3(a).

"Closing" has the meaning assigned to such term in Section 8.1.

"Closing Date" has the meaning assigned to such term in Section 8.1.

"Closing Payment" has the meaning assigned to such term in Section 2.1.

"Code" has the meaning assigned to such term in Section 2.3.

"Disclosure Schedule" has the meaning assigned to such term in Article 3.

"Effective Date" has the meaning assigned to such term in the first sentence of this Agreement.

"Environmental Laws" means any applicable laws, regulations, ordinances or governmental requirements (including the Comprehensive Environmental Response, Compensation, and Liability Act "CERCLA") relating to the manufacture, importation, distribution, generation, production, installation, use, storage, treatment, transportation, Release, threatened Release, or disposal of Hazardous Materials, noise control, or the protection of human health or safety, natural resources, or the environment, during the period that Seller has operated the Business or occupied the Real Property.

"Excluded Assets" has the meaning assigned to such term in Section 1.2.

"Excluded Liabilities" has the meaning assigned to such term in Section 1.4.

SCANNED

JAN 29 2018

"Hazardous Materials" means any wastes, substances, radiation, or materials (whether solids, liquids or gases) (i) that are hazardous, toxic, infectious, explosive, radioactive, carcinogenic, or mutagenic; (ii) that are or become defined as a "pollutants," "contaminants," "hazardous materials," "hazardous wastes," "hazardous substances," "chemical substances," "radioactive materials," "solid wastes" or other similar designations in, or otherwise subject to regulation under, any Environmental Laws; or (iii) without limitation, which contain polychlorinated biphenyls (PCBs), friable asbestos and friable asbestos-containing materials, lead-based paints, urea-formaldehyde foam insulation, or petroleum or petroleum products (including crude oil or any fraction thereof).

"Indemnification Cap" has the meaning assigned to such term in Section 9.4.

"Indemnified Party" has the meaning assigned to such term in Section 9.3.

"Indemnifying Party" has the meaning assigned to such term in Section 9.3.

"Instruments of Conveyance" has the meaning assigned to such term in Section 1.4.

"Leases" has the meaning assigned to such term in Section 5.1(j).

"Liens" has the meaning assigned to such term in Section 3.4(b).

"Litigation" means any litigation, legal action, arbitration, proceeding, material demand, material claim or investigation pending or, to the Seller's Knowledge, threatened against, affecting or brought by or against any Seller related to the Purchased Assets, Seller's present or former employees affecting the Purchased Assets.

"Loss" and "Losses" have the meaning assigned to such terms in Section 9.1.

"Nondelivered Asset" has the meaning assigned to such term in Section 1.5.

"Notifying Party" has the meaning assigned to such term in Section 9.3.

"Party" means each of Buyer and Seller and together Buyer and Seller are the "Parties".

"Permitted Encumbrances" means (a) encumbrances for Taxes not yet due and payable, and (b) statutory encumbrances of landlords, carriers, warehousemen, mechanics and materialmen and other similar encumbrances imposed by any applicable law in the ordinary course of business for sums not yet due and payable.

"Person" shall include all natural persons, corporations, business trusts, associations, companies, partnerships, joint ventures and other entities and governments and agencies and political subdivisions.

"Purchase Price" has the meaning assigned to such term in Section 2.1.

"Purchased Assets" has the meaning assigned to such term in Section 1.1.

"Buyer" has the meaning assigned to such term in the first sentence of this Agreement.

SCANNED

JAN 2 9 2018

"Buyer Indemnified Party" and "Buyer Indemnified Parties" have the meaning assigned to such terms in Section 9.1.

"Buyer Losses" has the meaning assigned to such term in the sentence following Section 9.1(e).

"Real Property" has the meaning assigned to such term in Section 1.1(b).

"Real Property Law" shall mean any applicable building, zoning, subdivision or other land use or similar law, ordinance, regulation, order or decree.

"Real Property Lease" has the meaning assigned to such term in Section 3.4(a).

"Regulatory Approvals" has the meaning assigned to such term in Section 5.1(g).

"Release" has the meaning assigned to such term under CERCLA.

"Seller" has the meaning assigned to such term in the first sentence of this Agreement.

"Seller Indemnified Parties" has the meaning assigned to such term in Section 9.2.

"Seller Losses" has the meaning assigned to such term in Section 9.2.

"Tax" or "Taxes" means net or gross income, gross receipts, excise, sales, personal, or real property, payroll, employment, unemployment, franchise, capital, doing business, net worth, ad valorem, value added, transfer, social security, stamp, recording, documentary, occupancy, withholding, and any other Taxes, fees (including, flowage fees), duties, levies, imposts, or similar charges, including interest, penalties or additions thereto imposed by any taxing authority.

## APPENDICES, SCHEDULES AND EXHIBITS

Appendix I - Definitions

Schedule 1.1– Purchased Assets

Schedule 1.2– Excluded Assets

Schedule 1.3– Assumed Liabilities

Schedule 1.4– Excluded Liabilities

SCANNED

JAN 29 2018

Salient Arms International Asset Purchase Agreement
Exhibit A

September 21, 2017

Heads of Terms

1. Total Value of sale = $3M – ($500K of debt) to be paid over 60 months. Total monthly payments for the next 5 years will = $41,666 per month
2. To avoid legal risks including (Mike Israliyan revoke of sale) there will be two agreements:
   a. $300K total value of Asset Purchase Agreement
   b. $2.2M total value of Consulting Agreement
3. Insurance (Requires discussion with Shehraze)
4. Salient (Louisiana) will fulfill pending orders to be estimated at $500K (not to affect the total $2.5M payment).
5. Adrian will audit any and all distributor and dealer claims for unfulfilled orders.
6. Separate lease agreement will be drafted after establishing the required footprint to operate the R&D operations and Assembly. (First 6 months free rent pending Evike discussion)
7. 10 days per month of consulting by Adrian to lead the R&D, Design, and transition.
8. 10 days per month of consulting by Aaron to lead the marketing efforts and transition.
9. 120 days' notice to renew and renegotiate the existing consulting agreement with Adrian and Aaron.
10. Salient (Louisiana) will have total ownership for all designs produced by Adrian by utilizing the allocated R&D funds for Salient (Louisiana). Adrian will have the option of buying the designs upon Salient's (Louisiana) approval
11. Adrian and Aaron to be named under the Board of Advisors for Salient. (Acceptance of the position is to be confirmed upon Adrian and Aaron's approval)
12. Adrian and Aaron will provide clarity and disclose any possible conflict of interest and will abide by the guidelines set and agreed upon in the agreement. (pending discussion)
13. Salient (Louisiana) reserves the right to terminate the roles and responsibilities for both Adrian and Aaron as board of Advisors and will not affect the compensation of ($2.5M over 5 years)

Signatories

---

Salient Arms International, Inc.
Adrian Chavez, President
September 21, 2017

---

Salient Arms International, Inc.
Aaron Chavez, Vice President
September 21, 2017

---

Salient Arms Int. LLC
Shehraze Shah, Partner
September 21, 2017

SCANNED

JAN 29 2018

Salient Arms International Asset Purchase Agreement
Exhibit A

September 21, 2017

Heads of Terms

1. Total Value of sale = $3M – ($500K of debt) to be paid over 60 months. Total monthly payments for the next 5 years will = $41,666 per month
2. To avoid legal risks including (Mike Israilyan revoke of sale) there will be two agreements:
   a. $300K total value of Asset Purchase Agreement
   b. $2.2M total value of Consulting Agreement
3. Insurance (Requires discussion with Shehraze)
4. Salient (Louisiana) will fulfill pending orders to be estimated at $500K (not to affect the total $2.5M payment).
5. Adrian will audit any and all distributor and dealer claims for unfulfilled orders.
6. Separate lease agreement will be drafted after establishing the required footprint to operate the R&D operations and Assembly. (First 6 months free rent pending Evike discussion)
7. 10 days per month of consulting by Adrian to lead the R&D, Design, and transition.
8. 10 days per month of consulting by Aaron to lead the marketing efforts and transition.
9. 120 days' notice to renew and renegotiate the existing consulting agreement with Adrian and Aaron.
10. Salient (Louisiana) will have total ownership for all designs produced by Adrian by utilizing the allocated R&D funds for Salient (Louisiana). Adrian will have the option of buying the designs upon Salient's (Louisiana) approval
11. Adrian and Aaron to be named under the Board of Advisors for Salient. (Acceptance of the position is to be confirmed upon Adrian and Aaron's approval)
12. Adrian and Aaron will provide clarity and disclose any possible conflict of interest and will abide by the guidelines set and agreed upon in the agreement. (pending discussion)
13. Salient (Louisiana) reserves the right to terminate the roles and responsibilities for both Adrian and Aaron as board of Advisors and will not affect the compensation of ($2.5M over 5 years)

Signatories


Salient Arms International, Inc.
Adrian Chavez, President
September 21, 2017



Salient Arms International, Inc.
Aaron Chavez, Vice President
September 21, 2017


Salient Arms Int. LLC
Shehraze Shah, Partner
September 21, 2017

SCANNED

JAN 29 2018

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| **Intellectual Property:**<br>a. Technical drawings, representations, schematics, testing related to the following items: SKUs 1 to ? required to produce – TDPs<br>-All Glock Platform mods, Tier 1&2 with and without optics, Glock Trigger, Glock Magwell (Patent pending)<br>-GRY Rifle Platform- Jailbreak (Patent Pending)<br>-BLU-(s,c)-<br>-RED-1911/2011<br>-Berda - ?<br>-Bennelli-? | SAI, INC (Nevada) (not officially owned by any entity, but were funded under the SAI INC) | Harddrive in LV office and on Dropbox | *<br>*Trade Dress Copy Right (costs about 8k) needs to be done but currently aren't<br>*List of all TDP |
| b. Inventions, processes, designs, formulae, procedures, source codes, trade secrets, know-how, Industrial models, confidential and technical information, manufacturing, engineering and technical drawings, product specifications, confidential business information, and other proprietary knowledge, including all flow charts, notes, and outlines relating | SAI Inc | | *Craftsmanship *manuals * |
| c. Patents (including design patents, industrial designs and utility models), patent applications, patent disclosures awaiting filing determination, inventions and improvements | Adrian and Aaron | | *Review stage |

JAN 29 2018

SCANNED

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| d.  Trademarks, service marks, domain names, trade names, trade dress, logos, business and product names, slogans, and registrations and applications for registration | Adrian and Aaron- trademark & logo FB & Instagram, Lyfe - Aaron | | *salientarmsinternational.com *www.salientarms.com Social media -FB, Instagrm, Twitter *Lyfe by Salient .com *intl Trademark? |
| e.  Copyrights (including software) and registrations | | | NA |
| All Furniture, Machinery, and Equipment | SAI, Inc | Vegas | Mo has Machinery List -large and small/tools *need list with serial numbers |
| All Permits, Approvals, and Memberships to the extent assignable under applicable Law and which are held or used by the Sellers and relate to the ownership, development and business or operation of the Purchased Assets (i.e. NRA, Gun Clubs) | | | N/A |
| Listed computer hardware, software, and data processing equipment owned or licensed by the Sellers or used in the business or operation. Software used in design and production. – list provision upon inventory count (TBD) | SAI, Inc | Vegas | ? |
| All Inventory – Raw materials and finished goods listed upon inventory count (TBD) | SAI, Inc | Vegas | *lump |

SCANNED JAN 29 2018

List of Purchased Assets
Schedule 1.1

| Asset Description | Current Ownership | Location | Remarks |
|---|---|---|---|
| **All records related to the business**, operation or ownership of the Purchased Assets or the operation of Salient Arms International including all customer lists, maintenance records, files, charts, books, records, ledgers, data, databases and documentation relating to the Purchased Assets or ad valorem and sales and use Tax returns and records (but specifically excluding income Tax returns, franchise Tax returns and supporting materials for such returns such as working papers and Tax provisions), and the Healthcare System's policy and procedure manuals, compliance programs, standard operating procedures, operating manuals and files; all data and Records related to the operations of Seller, including client and customer lists and Records, referral sources, research and development reports and Records, 5935217v.1 production reports and Records, service and warranty Records, equipment logs, operating guides and manuals, financial and accounting Records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and Records and, subject to Legal Requirements | SAI, Inc. | Vegas | *customer work orders physical - mostly on dropbox -advertising materials – signs, promo items, |

SCANNED

JAN 29 2018

# Nicholas F. LaRocca, Jr., Ltd.

(A Professional Law Corporation)
607 Brashear Avenue, Morgan City, Louisiana 70380
Mailing Address: P. O. Box 2466, Morgan City, Louisiana 70381-2466
Telephone: (985) 385-4800   Fax: (985) 385-6002
E-mail: nlarocca@laroccalaw.com
URL: www.laroccalaw.com

Nicholas F. LaRocca, Jr.                                      Angela M. Lancon, Paralegal

January 25, 2018

Clerk of Court
ATTN: Charlene
St. Mary Parish
Post Office Drawer 1231
Franklin, Louisiana 70538

Re:   Salient Arms Int., LLC vs. Salient Arms International Inc, et al
      Docket # 132,015 Div "B"

Dear Sir:

Enclosed please find the following for filing:

__XX__   Original of a Petition for Specific Performance;

__XX__   Check in the amount of $728.00

Please return to me:

__XX__   A conformed copy of said document at your earliest convenience;

         Also, please issue service on the defendants pursuant to the Long Arm Statute.

         If you have any questions concerning this matter, please do not hesitate to call.

                              Sincerely,

                              NICHOLAS F. LaROCCA, JR., LTD.
                              (A Professional Law Corporation)

                              Angela Lancon
                              Paralegal to Nicholas F. LaRocca, Jr.

Enclosures



# Nicholas F. LaRocca, Jr., Ltd.

(A Professional Law Corporation)
607 Brashear Avenue, Morgan City, Louisiana 70380
Mailing Address:  P. O. Box 2466, Morgan City, Louisiana 70381-2466
Telephone:  (985) 385-4800   Fax:  (985) 385-6002
E-mail:  nlarocca@laroccalaw.com
URL: www.laroccalaw.com

Nicholas F. LaRocca, Jr.                                                                                                            Angela M. Lancon, Paralegal

January 9, 2018

VIA FAX (337) 828-2509

Honorable Cliff Dressel
ATTN: Charlene
Clerk of Court
P.O. Drawer 1231
Franklin, LA 70538

Re:     Salient Arms Int., LLC vs. Salient Arms International, Inc., Adrian
Chavez and Aaron Chavez

Dear Sir:

Please issue service on the above named defendants, Salient Arms International, Inc., Adrian Chavez and Aaron Chavez pursuant to the Long Arm Statute.

If you have any questions concerning this matter, please do not hesitate to call.   Your assistance in this matter is appreciated.

Sincerely,

NICHOLAS F. LaROCCA, JR., LTD.
(A Professional Law Corporation)

Angela Lancon
Paralegal to Nicholas F. LaRocca, Jr.

Enclosures

SCANNED

JAN 2 9 2018

# *Cliff Dressel*

Clerk of Court
St. Mary Parish
P. O. Drawer 1231
Franklin, Louisiana 70538-1231
Phone: (337) 828-4100 Ext. 200

Jane C. Pilant
Chief Deputy

Fax:
(337) 828-2509

January 29, 2018

NICHOLAS F. LAROCCA JR.
NICHOLAS F. LAROCCA, JR., LTD
P.O. BOX 2466
MORGAN CITY, LA  70381-2466

SALIENT ARMS INT. LLC
VS. NO. 132015 Div. "B"
SALIENT ARMS INTERNATIONAL INC,
ET AL

Dear Mr. LaRocca,

Please find enclosed a congressionally certified copy of the Citation and Petition issued for service on Salient Arms Internation, Inc., Adrian Chavez and Aaron Chavez pursuant to Long Arm Statute.

If any further information is needed, please call or write.

Very truly yours,

Dy. Clerk of Court

Enclosure

# CITATION

SALIENT ARMS INT. LLC

Vs. No. 132015 Div "B"

SALIENT ARMS INTERNATIONAL INC,
ET AL



STATE OF LOUISIANA

16ᵗʰ JUDICIAL DISTRICT COURT

PARISH OF ST. MARY

To: <u>SALIENT ARMS INTERNATIONAL INC</u> 

_____

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation or to file your answer or other pleading to said petition in the office of the Clerk of the 16ᵗʰ Judicial District Court in the St. Mary Parish Court House in the City of Franklin in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE AT FRANKLIN, LOUISIANA, JANUARY 29, 2018.

CLIFF DRESSEL
Clerk of Court
St. Mary Parish, Louisiana
16ᵗʰ Judicial District Court

_____
Deputy Clerk of Court
JRS

### SPACE BELOW FOR SHERIFF'S RETURN

**(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO  LONG ARM STATUTE.)**

[ FILE COPY ]

# CITATION

SALIENT ARMS INT. LLC

Vs. No. 132015 Div "B"



SALIENT ARMS INTERNATIONAL INC,
ET AL

STATE OF LOUISIANA

16th JUDICIAL DISTRICT COURT

PARISH OF ST. MARY

To: SALIENT ARMS INTERNATIONAL INC



You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation or to file your answer or other pleading to said petition in the office of the Clerk of the 16th Judicial District Court in the St. Mary Parish Court House in the City of Franklin in said Parish within thirty (30) days after the service hereof. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE AT FRANKLIN, LOUISIANA, JANUARY 29, 2018.

CLIFF DRESSEL
Clerk of Court
St. Mary Parish, Louisiana
16th Judicial District Court

Deputy Clerk of Court
JRS

SPACE BELOW FOR SHERIFF'S RETURN

(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO LONG ARM STATUTE.)

[ ORIGINAL ]

## CITATION

SALIENT ARMS INT. LLC

Vs. No. 132015 Div "B"

SALIENT ARMS INTERNATIONAL INC,
ET AL



STATE OF LOUISIANA

16th JUDICIAL DISTRICT COURT

PARISH OF ST. MARY

To: <u>AARON  CHAVEZ,</u> _____

_____

     You are hereby cited to comply with the demand contained in the petition,
a certified copy of which accompanies this citation or to file your answer or
other pleading to said petition in the office of the Clerk of the 16th Judicial
District Court in the St. Mary Parish Court House in the City of Franklin in said
Parish within thirty (30) days after the service hereof.  Your failure to comply
herewith will subject you to the penalty of entry of default judgment against you.

WITNESS  MY  HAND  AND  OFFICIAL  SEAL  OF  OFFICE  AT  FRANKLIN,
LOUISIANA, JANUARY 29, 2018.

CLIFF DRESSEL
Clerk of Court
St. Mary Parish, Louisiana
16th Judicial District Court

_____
Deputy Clerk of Court
JRS

SPACE BELOW FOR SHERIFF'S RETURN

**(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO
NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO  LONG
ARM STATUTE.)**

[ FILE COPY ]

# CITATION

**SALIENT ARMS INT. LLC**

**Vs. No. 132015 Div "B"**

**SALIENT ARMS INTERNATIONAL INC, ET AL**



**STATE OF LOUISIANA**

**16ᵗʰ JUDICIAL DISTRICT COURT**

**PARISH OF ST. MARY**

To: <u>AARON CHAVEZ,</u> 

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation or to file your answer or other pleading to said petition in the office of the Clerk of the 16ᵗʰ Judicial District Court in the St. Mary Parish Court House in the City of Franklin in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE AT FRANKLIN, LOUISIANA, JANUARY 29, 2018.

**CLIFF DRESSEL**
**Clerk of Court**
**St. Mary Parish, Louisiana**
**16ᵗʰ Judicial District Court**

**Deputy Clerk of Court**
**JRS**

SPACE BELOW FOR SHERIFF'S RETURN

**(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO  LONG ARM STATUTE.)**

[ ORIGINAL ]

## CITATION

**SALIENT ARMS INT. LLC**

**Vs. No. 132015 Div "B"**

**SALIENT ARMS INTERNATIONAL INC, ET AL**



**STATE OF LOUISIANA**

**16ᵗʰ JUDICIAL DISTRICT COURT**

**PARISH OF ST. MARY**

To: <u>ADRIAN  CHAVEZ,</u>

_____

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation or to file your answer or other pleading to said petition in the office of the Clerk of the 16ᵗʰ Judicial District Court in the St. Mary Parish Court House in the City of Franklin in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE AT FRANKLIN, LOUISIANA, JANUARY 29, 2018.

**CLIFF DRESSEL**
**Clerk of Court**
**St. Mary Parish, Louisiana**
**16ᵗʰ Judicial District Court**

_____
**Deputy Clerk of Court**
**JRS**

SPACE BELOW FOR SHERIFF'S RETURN

**(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO  LONG ARM STATUTE.)**

[ FILE COPY ]

# CITATION

**SALIENT ARMS INT. LLC**

**Vs. No. 132015 Div "B"**

**SALIENT ARMS INTERNATIONAL INC,
ET AL**



**STATE OF LOUISIANA**

**16ᵗʰ JUDICIAL DISTRICT COURT**

**PARISH OF ST. MARY**

To: <u>ADRIAN  CHAVEZ,</u>

        You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation or to file your answer or other pleading to said petition in the office of the Clerk of the 16ᵗʰ Judicial District Court in the St. Mary Parish Court House in the City of Franklin in said Parish within thirty (30) days after the service hereof.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS  MY  HAND  AND  OFFICIAL  SEAL  OF  OFFICE  AT  FRANKLIN, LOUISIANA, JANUARY 29, 2018.

                                    **CLIFF DRESSEL**
                                     **Clerk of Court**
                                   **St. Mary Parish, Louisiana**
                                   **16ᵗʰ Judicial District Court**

                                     **Deputy Clerk of Court**
                                     **JRS**

### SPACE BELOW FOR SHERIFF'S RETURN

**(CERTIFIED COPY OF THE CITATION AND PETITION FORWARDED TO NICHOLAS F. LAROCCA, JR., ATTY. FOR SERVICE PURSUANT TO  LONG ARM STATUTE.)**

[ ORIGINAL ]